**Docket No. 11-56986**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**SGT. JEFFREY S. SARVER,**

**Plaintiff-Appellant**

**vs.**

**NICHOLAS CHARTIER; et. al.,**

**Defendants-Appellees.**

**On Appeal from the United States District Court, Central District of California
No. 2:10-CV-09034 JHN-JC
JUDGE JACQUELINE H. NGUYEN**

**EXCERPTS OF RECORD – VOL. I**
**(pgs. 1-70)**

Submitted by:

Michael R. Dezsi
Law Office of Michael R. Dezsi, PLLC
615 Griswold, Suite 700
Detroit, MI 48226
(313)281-8090
www.dezsilaw.com
*Counsel for Plaintiff-Appellant*

## INDEX TO EXCERPTS OF RECORD

### VOLUME I

| Description of Entry | Record Entry No. | Excerpts Page No. |
|---|---|---|
| Judgment | R.160 | 1 |
| Judgment | R.159 | 3 |
| Order Denying Plaintiff's Motion Stay Execution and Waiver of Bond Pending Appeal | R.156 | 5 |
| Judgment | R.154 | 11 |
| Tentative Ruling | R.149-2 | 13 |
| Order Granting Def Motions to Strike | R.129 | 37 |
| In Chambers Order (minute entry) | R.123 | 59 |
| Order Denying Motion to Dismiss | R.55 | 60 |
| Opinion | R.54 | 62 |

### VOLUME II

| Description of Entry | Record Entry No. | Excerpts Page No. |
|---|---|---|
| Notice of Appeal | R.161 | 71 |
| Notice of Appeal | R.135 | 73 |
| Transcript of proceedings held on 8/8/2011 | R.130 | 75 |
| Declaration of First Sgt. Paul Wilcock | R.110-1 | 107 |
| Declaration of Sgt. Sarver with Exhibits A-D | R.105 | 112 |
| Declaration of Mark Boal | R.98-1 | 153 |
| Complaint | R.1 | 174 |
| Civil Docket Entries for District Court | n/a | 200 |

1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10

SGT. JEFFREY S. SARVER,                    )     Case No.  2:10-cv-09034-JHN-JCx
11                                          )
                Plaintiff,                  )
12                                          )     **JUDGMENT IN FAVOR OF**
        vs.                                 )     **DEFENDANT SUMMIT**
13                                          )     **ENTERTAINMENT, LLC**
THE HURT LOCKER, LLC;  MARK                 )
14  BOAL;  KATHRYN BIGELOW;                 )
    GREG SHAPIRO;  NICOLAS                   )
15  CHARTIER;  TONY MARK;  DONALL)
    MCCLUSKER;  SUMMIT                       )
16  ENTERTAINMENT, LLC;  VOLTAGE )
    PICTURES, LLC;  GROSVENOR                )
17  PARK MEDIA, LP;  FIRST LIGHT            )
    PRODUCTIONS, INC.;  KINGSGATE           )
18  FILMS, INC. and PLAYBOY                  )
    ENTERPRISES, INC., Jointly and          )
19  Severally,                              )
                                            )
20              Defendants.                 )
                                            )
21                                          )

22
23
24
25
26
27
28

**0001**

## JUDGMENT

Having granted the Motion to Strike pursuant to section 425.16 of the California Code of Civil Procedure in favor of Defendant Summit Entertainment, LLC, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment shall be entered in favor of Defendant Summit Entertainment, LLC. Defendant Summit Entertainment, LLC shall recover from Plaintiff Jeffrey S. Sarver the total amount of $59,395.30 in attorneys' fees.


Dated: February 10, 2012

HON. JACQUELINE H. NGUYEN
United States District Judge


Submitted by:

/s/ David Halberstadter
Attorneys for Defendant
Summit Entertainment, LLC

**0002**

Case: 11-56996 02/13/2013 ID: 8512444 DktEntry: 34-1 Page: 5 of 39

1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SGT. JEFFREY S. SARVER,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE HURT LOCKER, LLC; MARK BOAL; KATHRYN BIGELOW; GREG SHAPIRO; NICOLAS CHARTIER; TONY MARK; DONALL MCCLUSKER; SUMMIT ENTERTAINMENT, LLC; VOLTAGE PICTURES, LLC; GROSVENOR PARK MEDIA, LP; FIRST LIGHT PRODUCTIONS, INC.; KINGSGATE FILMS, INC. and PLAYBOY ENTERPRISES, INC., Jointly and Severally,<br><br>    Defendants. | Case No.  2:10-cv-09034-JHN-JCx<br><br>**JUDGMENT IN FAVOR OF DEFENDANTS THE HURT LOCKER, LLC, GREG SHAPIRO, NICOLAS CHARTIER, VOLTAGE PICTURES, LLC, GROSVENOR PARK MEDIA L.P. AND KINGSGATE FILMS, INC.** |

28

# JUDGMENT

Having granted the Motion to Strike Plaintiff's Complaint Pursuant To Cal. Civ. Proc. Code § 425.16 filed by Defendants The Hurt Locker, LLC, Greg Shapiro, Nicolas Chartier, Voltage Pictures, LLC, Grosvenor Park Media, L.P. and Kingsgate Films, Inc. (collectively the "Hurt Locker Defendants"), IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment shall be entered in favor of the Hurt Locker Defendants. The Hurt Locker Defendants shall recover from Plaintiff Jeffrey S. Sarver the total amount of $89,753.85 in attorneys' fees.

Dated: February 10, 2012

HON. JACQUELINE H. NGUYEN
United States District Judge

Submitted by:

/s/        Jon-Jamison Hill
Attorneys for DefendantsThe Hurt
Locker, LLC, Greg Shapiro,
Nicolas Chartier, Voltage Pictures,
LLC, Grosvenor Park Media, L.P.
and Kingsgate Films, Inc.

**0004**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES—GENERAL

Case No.   2:10-cv-09034-JHN-JCx                    Date:  February 2, 2012
Title:     Jeffrey S. Sarver v. The Hurt Locker LLC et al.

Present:  The Honorable JACQUELINE H. NGUYEN

| Alicia Mamer | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:
Not Present                                         Not Present

**Proceedings:**  ORDER DENYING PLAINTIFF'S MOTION FOR STAY OF
                  EXECUTION AND WAIVER OF BOND PENDING APPEAL
                  (In Chambers)

The matter is before the Court on Plaintiff Jeffrey S. Sarver's ("Plaintiff") Motion
for Stay of Execution and Waiver of Bond Pending Appeal ("Motion"), filed on
December 21, 2011. (Docket no. 149.)  Defendants filed separate Oppositions,
(docket nos. 150, 152, 153), and Plaintiff filed a Reply. (Docket no. 155.)  Having
considered the briefs filed in connection with the matter, the Court deems the
matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b);
Local Rule 7-15. Accordingly, the hearing set for February 13, 2012, is removed
from the Court's calendar. For the following reasons, the Court **DENIES** the
Motion.[1]

_____

[1] As a preliminary matter, the Court notes Plaintiff's failure to comply with Local
Rule 7-3, requiring counsel to meet and confer meaningfully regarding any
contemplated motion prior to the filing of the motion. (Summit Opp'n at 1, n.1;
The Hurt Locker Opp'n at 1—2.) For all motions for which no time limit is
imposed on filing, "the conference shall take place at least ten (10) days prior to
the filing of the motion." L.R. 7-3. Failure to comply may constitute grounds for
dismissal of a motion. *See Alcatel-Lucent USA, Inc. v. Dugdale Comm., Inc.*, No.
09-2140, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009). Plaintiff's Reply
acknowledges non-compliance with Local Rule 7-3. (Reply 2—3.) However,
because the Court denies the Motion on substantive grounds, it will not dismiss the
Motion on the basis of this procedural defect.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

Case No.   2:10-cv-09034-JHN-JCx                    Date:  February 2, 2012

Title:      Jeffrey S. Sarver v. The Hurt Locker LLC et al.

## I.  BACKGROUND

In this action, Plaintiff Jeffrey Sarver ("Plaintiff") alleged that Defendants Nicolas
Chartier, Grosvenor Park Media, L.P., Kingsgate Films, Inc., Greg Shapiro, the
Hurt Locker, LLC, Mark Boal and Kathryn Bigelow, and Summit Entertainment,
LLC (collectively, "Defendants") based the movie *The Hurt Locker* on his personal
experiences while serving in the military, without his consent.  Defendants
successfully moved to strike the Complaint pursuant to Cal. Code Civ. Proc. §
425.16 (California's anti-SLAPP statute).  (Docket no. 129).  As mandated by
statute, the Court awarded Defendants' their reasonable attorney's fees and costs
cumulatively amounting to $187,124.65.  (Docket no. 146).

Plaintiff filed the instant Motion on December 21, 2011, requesting that the Court
stay execution of its order granting Defendants' fees pending Plaintiff's Ninth
Circuit appeal of the Court's decision on the anti-SLAPP motions.  (Docket no.
149.)  Defendants filed Oppositions, (docket nos. 150, 152, 153), and Plaintiff filed
a Reply.  (Docket no. 155.)

## II. ANALYSIS

Plaintiff argues that a stay is warranted upon a balancing of the four factors
typically analyzed with respect to a request for a preliminary injunction:  "(1) the
likelihood of success on the merits; (2) whether the applicant will suffer irreparable
harm without a stay; (3) whether the issuance of a stay will substantially injure the
other parties interested in the proceedings; and (4) whether there is a public interest
in granting or denying the stay."  (Mot. 6) (citing *Golden Gate Rest. Ass'n v. City
of S.F.*, 512 F.3d 1112, 1114 (9th Cir. 2008); *Lopez v. Heckler*, 713 F.2d 1432 (9th
Cir. 1983); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

However, courts in this circuit have held that the preliminary injunction test
specifically applies to a stay of *injunctive* relief pursuant to Federal Rule of Civil
Procedure ("Rule") 62(c), and is "irrelevant" in a case involving a monetary

---

Case: 11-56986 02/13/2013 ID: 8512444 DktEntry: 34-1 Page: 9 of 39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES—GENERAL**

Case No.   2:10-cv-09034-JHN-JCx                    Date:  February 2, 2012

Title:     Jeffrey S. Sarver v. The Hurt Locker LLC et al.

judgment. *Bolt v. Merrimack Pharms. Inc.*, No. 04-0893, 2005 WL 2298423 at *2
(E.D. Cal. Sept. 20, 2005); *see also C.B. v. Sonora School Dist.*, No. 09-00285,
2011 WL 4590770 at *19 (E.D. Cal. Sept. 30, 2011); *Biltmore Assoc., L.L.C., as
Trustee v. Twin City Fire Ins. Co.*, No. 05-04220, 2007 WL 2422053 at *1 (D.
Ariz. Aug. 22, 2007) (holding that "a Rule 62(c) stay is available only when 'an
appeal is taken from an interlocutory or final judgment granting, dissolving, or
denying an injunction,'" and that plaintiff's "arguments premised upon [four
preliminary injunction] factors . . . are inapposite" for purposes of Federal Rule of
Civil Procedure 62(d)).

Instead, a request for a stay of a money judgment pending appeal is governed by
Rule 62(d), which provides for a stay of execution upon posting of a supersedeas
bond. *See, e.g., Biltmore Assoc.*, 2007 WL 2422053 at *1 ("When a money
judgment is involved, one gets a stay by posting a bond.").[2]

---

[2]  In his Reply, Plaintiff argues that an award of attorney's fees does not qualify as
a "money judgment." (Reply 4 (citing *Poole v. Rourke*, 779 F. Supp. 1546,
1559—60 (E.D. Cal. 1991) ("An award of costs and fees under EAJA . . . is more
akin to specific relief than to money damages"). In applying Rule 62(c) to EAJA
attorney's fees, the *Poole* court specifically reasoned that the subject "fees and
costs are not compensatory, but arise 'solely as incidents of the effort to achieve
compensation.'" *Poole*, 779 F. Supp. at 1560 (quoting *Bruch v. United States
Coast Guard*, 749 F. Supp. 688, 692 (E.D. Pa. 1990)); *see also Stone v. City and
Cnty of S.F.*, 145 F.R.D. 553, 561 (N.D. Cal. 1993) (sanctions for civil contempt
are not "money judgments" where the purpose is "to coerce defendants to comply
with the [court's order], rather than to compensate plaintiffs for the harm they
suffered"). By contrast, statutorily-mandated fee awards for successful anti-
SLAPP defendants are explicitly "intended to compensate a defendant for the
expense of responding to a SLAPP suit." *Wanland v. Law Offices of Mastagni,
Holstedt & Chiurazzi*, 141 Cal. App. 4th 15, 22 (2006) (internal citations and
quotation marks omitted). Given the reasoning in *Poole*, anti-SLAPP attorney's
fee awards are more akin to money damages than specific relief. Moreover, courts
within the Ninth Circuit have applied the Rule 62(d) bond requirement to
attorney's fee awards in various contexts. *See, e.g., Biltmore Assoc.*, 2007 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES—GENERAL

Case No.   2:10-cv-09034-JHN-JCx                    Date:  February 2, 2012

Title:     Jeffrey S. Sarver v. The Hurt Locker LLC et al.

Fed. R. Civ. P. 62(d) provides that "[a]n appellant may obtain a formal stay of the
judgment pending appeal by posting a supersedeas bond." *Columbia Pictures
Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197, n.6 (9th Cir.
2001) (citing Fed. R. Civ. P. 62(d)); *see also Vacation Village, Inc. v. Clark Cnty.,
Nev.*, 497 F.3d 902, 913 (9th Cir. 2007) ("Federal Rule of Civil Procedure 62(d) . .
. requires  . . . that the appellant post a supersedeas bond in order to obtain a stay
on appeal."). The purpose of the supersedeas bond is to "protect[] the prevailing
[party] from the risk of a later uncollectible judgment and compensates him for
delay in the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819
(9th Cir. 1988).

In some instances, "[t]he posting of adequate security other than a bond may waive
the supersedeas bond requirement." *Biltmore* Assoc., 2007 WL 2422053 at *1
(citing *United States v. Boyce*, 148 F. Supp. 2d 1069, 1096 (S.D. Cal. 2001)); *see
also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990)
(citing *Int'l Telemeter v. Hamlin Int'l Co.*, 754, F.2d 1492, 1495 (9th Cir. 1985)).

Alternatively, the district court may waive the bond requirement upon evaluation
of the *Dillon* factors:

> (1) the complexity of the collection process; (2) the amount of
> time required to obtain a judgment after it is affirmed on appeal;

2422053 at *1 (denying requested waiver of bond requirement for stay pending
appeal of an award of attorney's fees); *Parenteau v. Prescott Unified School Dist.*,
No. 07-8072, 2010 WL 729101 (D. Ariz. Mar. 2, 2010) (because IDEA plaintiffs
had not posted a bond, award of attorney's fees to successful defendants was
enforceable despite pendency of appeal); *but see League for Coastal Protection v.
Kempthorne*, No. 05-0991, 2007 WL 1982778 at *2 (N.D. Cal. July 2, 2007) ("The
Court will not apply the term 'money judgment' so broadly as to encompass
attorneys' fees and costs that were incurred while seeking the injunctive relief at
issue" in EAJA case.). For these reasons, the Court finds that Rule 62(d) governs
the instant Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES—GENERAL

Case No.   2:10-cv-09034-JHN-JCx                    Date:  February 2, 2012
Title:     Jeffrey S. Sarver v. The Hurt Locker LLC et al.

> (3) the degree of confidence that the district court has in the availability of funds to pay the judgment . . . (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon v. City of Chi.*, 866 F.2d 902, 904—905 (7th Cir. 1988) (quotation marks omitted) (citations omitted). The *Dillon* factors are regularly applied in Ninth Circuit courts. *United States v. Moyer*, No. 07-00510, 2008 WL 3478063 (N.D. Cal. Aug. 12, 2008) (citing *Biltmore Assoc.*, 2007 WL 2422053 at *1; *U.S. v. Simmons*, No. 96-5948, 2002 WL 1477460 at *1 (E.D. Cal. May 14, 2002); *F.T.C. v. Publ'g Clearing House, Inc.*, No. 94-623, 1995 WL 792074 at *1 (D. Nev. Jul. 13, 1995; *Translogic Tech., Inc. v. Hitachi, Ltd.,* No. 99-407, 2006 WL 897995 at *5—6 (D. Or. Apr. 6, 2006); *United States v. Boyce*, 148 F. Supp. 2d at 1096).

Here, Plaintiff has neither posted a supersedeas bond nor offered any form of substitute security.  Furthermore, Plaintiff has not articulated an argument for discretionary waiver of the bond requirement based on the above factors.[3]  The Court is sympathetic to the financial hardship to Plaintiff.  However, the Court

---

[3] Plaintiff's Reply apparently advances an efficiency argument based on an unpublished order in *Metabolife Int'l v. Susan Wornick et al.*, No. 99-1095 (S.D. Cal. Jan. 13, 2000), in which the district court stayed the scheduled hearing on a successful anti-SLAPP defendant's motion for attorney's fees pending appeal to the Ninth Circuit.  (Reply, Ex. A.)  However, in that case, the district court had yet to rule on the motion for fees.  (*Id.* at 2.)  It determined that a stay would promote judicial efficiency, given that the fee award would almost certainly be affected by the appeal, and considering that defendant had yet to provide the Court with sufficient detail regarding claimed fees and costs.  (*Id.* at 2.)  Neither concern is relevant here, as the Court has already ruled on Defendants' motions, all of which were supported by sufficiently detailed documentation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES—GENERAL

Case No.   2:10-cv-09034-JHN-JCx                    Date:  February 2, 2012

Title:     Jeffrey S. Sarver v. The Hurt Locker LLC et al.

cannot place Defendants' statutory right to recovery at risk solely on the basis of
Plaintiff's ability to pay.  Indeed, it may be an abuse of discretion to do so.  *See,
e.g., Geddes v. United Fin. Grp.*, 559 F.2d 557, 560—61 (9th Cir. 1977) (holding
that district court abused its discretion in granting stays of execution based solely
on parties' ability to pay the judgments).[4]  Plaintiff's financial hardship suggests
that a bond, or other form of security, is particularly necessary here in order to
protect Defendants' right to enforce their monetary judgments.  *See Fed.
Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)
(stating that "a full supersedeas bond should be the requirement in normal
circumstances, such as where there is some reasonable likelihood of the judgment
debtor's inability or unwillingness to satisfy the judgment . . . .").  Therefore, the
Court denies Plaintiff's request to waive the requirement that he post a supersedeas
bond in order to stay execution of the attorney's fees award pending his Ninth
Circuit appeal.

III.CONCLUSION

For the foregoing reasons, Plaintiffs Motion for a Stay of Execution Pending
Appeal is DENIED.

IT IS SO ORDERED.

                                                    __ : N/A
                                    Initials of Preparer   AM

---

[4]  Although Plaintiff  submits a declaration indicating that he will have to file for
bankruptcy if the stay is denied, he has supplied no evidence from which the Court
can infer that the fifth *Dillon* factor weighs in his favor—i.e., that a stay is
necessary to prevent harm to other creditors.  *See Taylor v. Horizon Distrib., Inc.*,
No. 07-1984, 2010 WL 582108 at *1 (D. Ariz. Feb. 17, 2010) (citing *Biltmore
Assoc.*, 2007 WL 2422053 at *1).

1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SGT. JEFFREY S. SARVER, | CASE NO. **2:10-cv-09034-JHN -JCx** |
| Plaintiff, | **JUDGMENT IN FAVOR OF DEFENDANTS KATHRYN BIGELOW AND MARK BOAL** |
| v. | |
| THE HURT LOCKER, LLC; MARK BOAL; KATHRYN BIGELOW; GREG SHAPIRO; NICOLAS CHARTIER; TONY MARK; DONALL MCCLUSKER; SUMMIT ENTERTAINMENT, LLC; VOLTAGE PICTURES, LLC; GROSVENOR PARK MEDIA, LP; FIRST LIGHT PRODUCTIONS, INC.; KINGSGATE FILMS, INC. and PLAYBOY ENTERPRISES, INC., Jointly and Severally, | |
| Defendants. | |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**0011**

10571.00002/98192.1                                                                 2:

**JUDGMENT IN FAVOR OF DEFENDANTS KATHRYN BIGELOW AND MARK BOAL**

1   Having granted Defendants Kathryn Bigelow and Mark Boal's Motion to
2  Strike pursuant to Cal. Code Civ. Proc. § 425.16 on October 13, 2011, IT IS
3  HEREBY ORDERED, ADJUDGED AND DECREED THAT that judgment shall
4  be entered in favor of Defendants Kathryn Bigelow and Mark Boal.  Defendants
5  Kathyrn Bigelow and Mark Boal shall recover from Plaintiff Jeffrey S. Sarver the
6  total amount of $37,975.50 in attorneys' fees.

7
8  Dated:  January 25, 2012
9                                          HON. JACQUELINE H. NGUYEN
10                                          United States District Judge
11
12  Submitted by
13  By: //s Jeremiah Reynolds
14  Attorneys for Defendants
    Kathryn Bigelow and Mark Boal

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

0012

10571.00002/98192.1

JUDGMENT IN FAVOR OF DEFENDANTS KATHRYN BIGELOW AND MARK BOAL

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### ELECTRONIC TRANSMISSION



**JACQUELINE H. NGUYEN**
United States District Court Judge
United States District Court-Central District of California
Roybal Federal Building, Courtroom 790
255 East Temple Street
Los Angeles, CA 90012
213-894-1825
JHN_chambers@cacd.uscourts.gov

TO:     *SEE PAGE 2 LIST*

FROM:     Hon. Jacqueline H. Nguyen

Re:   Case No.     2:10-cv-09034-JHN -JC

    Motion:     MOTIONS to Strike Complaint [78] & [98]; JOINDERS [82] & [83]

    Hearing date: August 8, 2011

Date sent:     August 4, 2011

TOTAL NUMBER OF PAGES TRANSMITTED (including this page): 25 24

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**If you are submitting on the Court's tentative ruling, please call the clerk, Alicia
Mamer, at 213-894-2554 and so indicate. If all parties submit, you will be called and
notified that the hearing is off-calendar and the Court's final order, consistent with its
tentative ruling, will be issued. Absent a call from the clerk, the motion will remain on
the Court's calendar for hearing.**

PARTIES SERVED:

Erik Louis Jackson,
Geoffrey Nels Fieger
Linda George
Nathan Dooley
Todd J Weglarz
Jon-Jamison Hill
Jackie M Joseph
David Halberstadter
Sally Wu
Andrew James Hughes
Dale F Kinsella
Jeremiah Tracy Reynolds

AT THE FOLLOWING ADDRESSES:

ejackson@cozen.com,fiegerlaw.com,lgdefense@yahoo.com,ndooley@cozen.com,tweglarz@fie
gerlaw.com,jhill@eisnerlaw.com,jjoseph@eisnerlaw.com,david.halberstadter@kattenlaw.com,
sally.wu@kattenlaw.com,hughes-a@blankrome.com,dkinsella@kwikalaw.com,jreynolds@kwik
alaw.com,

# TENTATIVE RULING

| | |
|---|---|
| Case Name and Number: | *Jeffrey S. Sarver v. The Hurt Locker LLC et al* |
| | 2:10-cv-09034-JHN -JCx |
| Matter Before the Court: | Motion to Strike by Defendants The Hurt Locker LLC *et al* |
| Hearing Date and Time: | August 8, 2011, 2:30 p.m. |
| Court's Tentative Ruling: | GRANT in part, DENY in part |

The matter is before the Court on Defendants'[1] Motion to Strike pursuant to Cal. Code Civ. Proc. § 425.16. (Docket no. 78, 82, 98.) For the foregoing reasons, the Court is inclined to GRANT Defendants' Motion in part and DENY in part. The Court tentatively finds that Plaintiff's claim for Right of Publicity/Misappropriation of Name and Likeness survives the Motion to Strike, but his False Light Invasion of Privacy, Defamation, Breach of Contract, Intentional Infliction of Emotional Distress, Actual/Intentional Fraud, and Constructive Fraud/Negligent Misrepresentation claims should be stricken from the Complaint.

## I.

## FACTUAL BACKGROUND

---

[1] The Motion was filed by Defendants Nicholas Chartier, Grosvenor Park Media, L.P., Kingsgate Films, Inc., Greg Shapiro, The Hurt Locker, LLC, and Voltage Pictures, LLC. (Docket no. 78.) It was joined by Summit Entertainment, LLC and separately by Defendants Mark Boal and Kathryn Bigelow. (Docket no. 82, 83, 98.)

1

This case concerns allegations that a movie based on Plaintiff Jeffrey Sarver's ("Plaintiff") life story and military service in Iraq was made without his consent. (Compl. ¶ 23.)  Plaintiff has been a member of the United States Army since 1991. (*Id.* ¶ 26.)  He served in Iraq as an Explosive Ordinance Disposal (EOD) technician with the 788th Ordinance Company from July 2004 through January 2005. (*Id.* ¶¶ 33-50.)  Plaintiff was one of approximately 150 EOD technicians in Iraq at the time. (*Id.* ¶ 36.)

While Plaintiff was in Iraq, the Department of Defense permitted media representatives to live, work and travel with military units. (*Id.* ¶ 29.)  Defendant Mark Boal ("Boal") was embedded with the 788th Ordinance Company for 30 days in December 2004 as a reporter for *Playboy Magazine*. (Sarver Decl. ¶¶ 11, 14.)  Plaintiff alleges Boal communicated with Defendant Kathryn Bigelow ("Bigelow") about his experiences while embedded in Iraq. (Weglarz Decl., Ex. A.)[2]  According to Boal, he spent only 14 days with Plaintiff's unit. (Boal Decl. ¶ 3.)  Plaintiff contends, however, that Boal followed his unit exclusively for 30 days. (Sarver Decl. ¶ 14-15.)  Boal took photographs and videos of Plaintiff and his unit, following them while they were on and off duty. (*Id.* ¶ 16.)

After Plaintiff returned from Iraq in 2005, Boal visited him in Wisconsin and conducted additional interviews. (Boal Decl. ¶ 4.)  After completing his article, Boal emailed a copy to both Plaintiff and members of his unit in August 2005. (*Id.*, Ex. B.)  Plaintiff objected to the article prior to its publication, but was told it had already been distributed. (Sarver Decl. ¶ 30.)  Boal published an 11 page

---

[2] Defendants object to Exhibit A attached to the Declaration of Todd J. Weglarz on the basis that the highlighted statements are hearsay. (Evidentiary Objections to the Weglarz Decl. at 2; docket no. 113.)  Because the Court does not rely on this Exhibit in the Order, the Court need not rule on this Objection.

article focused entirely on Plaintiff's life and experience in Iraq in the August/September 2005 issue of *Playboy* Magazine. (Compl., Ex. A.) An amended version of the article was later re-published in Reader's Digest in 2006. (Sarver Decl. ¶ 32.)

Boal contends that he interviewed Plaintiff for the express purpose of the article. (Boal Decl. ¶ 4.) Plaintiff alleges that he never consented to the use of his name or likeness and requested the article not be published. (Sarver Decl. ¶¶ 19, 27.)

Boal subsequently wrote screenplay for the *The Hurt Locker*, which was made into a motion picture. (*Id.* ¶ 40.) *The Hurt Locker* was released on June 26, 2009, at which time Plaintiff was stationed in New Jersey. (*Id.* ¶¶ 33-34.) Plaintiff alleges that he did not consent to the use of his story in a movie. (*Id.* ¶¶ 29, 39-40.) Although Plaintiff claims he was not invited to the premiere and attended on his own initiative, Boal claims he maintained contact with Plaintiff through this period and invited him to the premiere. (*Id.* ¶¶ 35-36; Boal Decl. ¶ 12.) The film underwent a limited release on July 24 2009, which included showings in theaters in New Jersey. (Sarver Decl. ¶¶ 37-38.) Plaintiff was transferred to Tennessee in September 2009, prior to the film's general release on January 12, 2010. (*Id.* ¶ 38; Compl. ¶ 60.)

Plaintiff believes the title character in the movie is based on his life and experiences, and points to characteristics of the movie's main character and events in the movie mirroring his personal story. (Sarver Decl. ¶ 41.) Although Defendants argue the title character was adapted from Boal's experience with EOD technicians and other interviews, the lead actor stated in an interview, "Where they showed me, definitely a guy, there was one guy they knew was like James, this

3

character I played." (Sarver Decl., Ex. C.)

     Plaintiff claims that he has been harmed both by the article and the film. (Sarver Decl. ¶ 46.)  He asserts the public disclosure of his identity places him at greater risk during military operations.  (Id. ¶ 46a.)   He also asserts he has been denied employment within the Joint Special Operations Command after being labeled a counter-intelligence risk for "selling" his movie rights.  (Id. ¶ 46c.)

## II.

## PROCEDURAL HISTORY

     On March 2, 2010, Plaintiff filed a complaint against Defendants alleging the following violations: Right of Publicity/Misappropriation of Name and Likeness, False Light Invasion of Privacy, Defamation, Breach of Contract, Intentional Infliction of Emotional Distress, Actual/Intentional Fraud, and Constructive Fraud/Negligent Misrepresentation. (Docket no. 1.)

     This case was initially filed in United States District Court, District of New Jersey.  The case was transferred to this Court under 28 U.S.C. § 1404(a) on November 18, 2010.  (Docket no. 54.)

     Defendants Chartier, Grosvenor Park Media, L.P., Kingsgate Films, Inc., Shapiro, The Hurt Locker, LLC, and Voltage Pictures, LLC, filed this motion to strike Plaintiff's complaint under Cal. Code Civ. Proc. § 425.16 ("anti-SLAPP") on February 2, 2011.  (Docket no. 78).  The Motion was joined by Boal and Bigelow, and separately by Summit Entertainment, LLC on the same date.  (Docket no. 82, 83, 98.)  Summit Entertainment, LLC, also motioned separately to strike several of the complaints against it predating its involvement with the film.  (Docket no. 82.)

## III.

## CHOICE OF LAW

4

Since this case was transferred from the District Court of New Jersey under 28 U.S.C. § 1404(a), the Court applies the choice of law rules of New Jersey. *See Van Dusen v. Barack*, 376 U.S. 612, 642 (1964). New Jersey's choice of laws follows the Restatement Second, Conflicts of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 139-42 (2008); *see also Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (1981). "The Second Restatement provides judges with a starting point . . .It is then up to the judge to make it all work." *P.V.*, 197 N.J. at 140.

"The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145. "Factors that are weighed include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.* A tort occurs wherever libelous material is spread, and an injured party can bring suit in "any forum with which the defendant has minimal contacts." *See Keeton v. Hustler*, 465 U.S. 770, 780-81 (1984).

Here, a New Jersey court would have applied California law because it has the greatest relationship with the occurrence and parties. To begin, factor (a)–the place where the injury occurred–is neutral. Although the tort occurred in New Jersey by virtue of the movie being shown there, it also occurred in all states where the movie was shown. Factor (b)–the place where the conduct causing the injury occurred–favors California. The movie was produced in California, where the

majority of defendants reside or are incorporated.[3]  While Plaintiff has no contacts with California, he has only weak contacts with other states.  Moreover, Plaintiff's September 2009 transfer to Tennessee indicates he was stationed in New Jersey subject to orders and not domiciled there.[4]  Factor (c)–the domicil [sic], residence, nationality, place of incorporation and place of business of the parties–only marginally militates towards New Jersey law.  Finally, factor (d)–the place where the relationship, if any, between the parties is centered–is also neutral.  The relationship between the parties was either non-existant or occurred in Iraq or Wisconsin.  Accordingly, the occurrence and parties have stronger ties to California than New Jersey, and a New Jersey court would have applied California law.

## IV.

## LEGAL STANDARD

California's "anti-SLAPP" statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  The statute should "be construed broadly." Cal. Code Civ. Proc. § 425.16(a).

---

[3]Of the thirteen defendants, only Boal is domiciled outside of California.

[4] "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).  "Service personnel are presumed not to acquire a new domicile when they are stationed in a place pursuant to orders; they retain the domicile they had at the time of entry into the services."  13E Charles Alan Wright et al., Federal Practice and Procedure § 3617, 607 (3d ed. 2009)*; see also Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (1st Cir. 2010).

6

"California courts evaluate a defendant's anti-SLAPP motion in two steps."
*Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). First, the defendant
must make a threshold showing that the act or acts of which the plaintiff complains
were in furtherance of the right of petition or free speech, and in connection with a
public issue. *Id.* Second, "the plaintiff 'must demonstrate that the complaint is
both legally sufficient and supported by a sufficient prima facie showing of facts to
sustain a favorable judgment if the evidence submitted by the plaintiff is
credited.'" *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) (quoting *Wilson v.
Parker, Covert, & Chidester*, 28 Cal.4th 811, 821 (2002)); *New.Net, Inc. v.
Lavasoft*, 356 F. Supp. 2d 1090, 1098 (2004); *see also Overstock.com, Inc. v.
Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699 (2007) (noting that the
plaintiff's burden of establishing a probability of prevailing is not high); *Gallagher
v. Connell*, 123 Cal. App. 4th 1260, 1275 (2004)(noting the plaintiff need make
only a minimal showing). "This burden is 'much like that used in determining a
motion for nonsuit or directed verdict,' which mandates dismissal when "no
reasonable jury" could find for the plaintiff." *Metabolife*, 264 F.3d at 840 (quoting
*Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 824 (Ct. App. 1994)).

## V.

## EVIDENTIARY OBJECTIONS

Defendants object to certain portions of the Declaration of Sergeant Jeffrey
S. Sarver ("Sarver Decl."), filed concurrently with Plaintiff's opposition.
(Evidentiary Objections to Sarver Decl.; docket no. 112.) The Court sustains the
objection to Sarver's statement that Sergeant Major James Clifford "advised" him
and others in his unit that they were to accommodate Boal and that Boal was only
reporting on EOD operations "in general" as hearsay. (Sarver Decl. ¶ 12.) The

7

Court also sustains the objection to attached Exhibit A, the government issued embedded media "Ground Rules," as lacking in foundation. The Court need not rule on Defendants' other objections to Sarver's Declaration because the Court's Order does not rely on those portions of Sarver's Declaration.

The Court also does not address Defendants' objections to the Declaration of Sergeant Paul Wilcock ("Wilcock Decl.") or Todd J. Weglarz ("Weglarz Decl.") because the Court does not rely on these declarations in the ruling. For the same reason, the Court need not address Plaintiff's evidentiary objections to the Declaration of Mark Boal. (Docket no. 121.)

## VI.

## DISCUSSION

Defendants argue they were engaged in protected speech and that Plaintiff has not proven a probability of success. Plaintiff counters that even if Defendants were engaged in protected speech, he has made a prima facie showing of a probability of prevailing.[5]

**A.    Defendant Was Engaged in the Exercise of Free Speech in Connection to a Public Issue**

---

[5]     As an initial matter, Plaintiff argues that Defendants' Motion was not timely filed. (Opp'n at 1.) Anti-SLAPP motions may be filed within 60 days of the commencement of an action. Cal. Code Civ. Proc. § 425.16(f). It is within the discretion of the Court to accept or deny Anti-SLAPP motions after 60 days provided the purposes of anti-SLAPP are not undermined. *See New Net, Inc.*, 356 F.Supp. 2d at 1100 (finding the motion could be considered because the case had not proceeded in any material respect); *see also* Cal. Code Civ. Proc. § 425.16(f); *Kunysz v. Sandler*, 146 Cal. App. 4th 1540, 1543 (Ct. App. 2007); *Morin v. Rosenthal*, 122 Cal. App. 4th 673, 678-79 (Ct. App. 2004). Here, the Court exercises its discretion to review the merits of the Motion, as the case has not proceeded in any material respect.

8

In order to bring an anti-SLAPP Motion, Defendants must establish that the challenged activity is both "in furtherance" of free speech as well as in connection to a public issue. *Hilton*, 599 F.3d at 902; Cal. Code Civ. Proc. § 425.16(e)(4); *see also Navellier*, 39 Cal. 4th at 94.

### 1. Activities Were in Furtherance of Free Speech

Cal. Code Civ. Proc. § 425.16 allows a person acting "in furtherance of the person's right of petition or free speech" to file an anti-SLAPP motion. Cal. Code Civ. Proc. § 425.16(b)(1). "The California Supreme Court has not drawn the outer limits of activity that furthers the exercise of free speech rights." *Hilton*, 599 F. 3d at 903. "The courts of California have interpreted this piece of the defendant's showing rather loosely." *Id* at 904. "Motion pictures are a significant medium for the communication of ideas." *Burstyn v. Wilson*, 343 U.S. 495, 501 (1952). Thus, "expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." *Id.* at 502.

Here, Defendants have met their burden of proving that they were engaged in protected speech because movies are considered free speech. Since *The Hurt Locker* was a commercial film, Defendants meet the first prong of their threshold showing.

### 2. The Complained of Conduct was Connected to an Issue of Public Interest

Next, Defendants must show that the acts complained of were connected to a matter of public interest. Defendants contend that the "conduct at issue in the Complaint . . . fall[s] squarely within the ambit of the anti-SLAPP statute." (Motion at 6.) California Courts have held that "'an issue of public interest' . . . is any issue in which the public is interested. In other words, the issue need not be

9

**0023**

'significant' to be protected by the anti-SLAPP statute–it is enough that it is one in
which the public takes an interest." *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal.
App. 4th 133, 144 (2011) (citing *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th
1027, 1042 (2008)). So long as the conduct at issue is connected to the public
interest in some way, Anti-SLAPP protection applies. *See Tamkin*, 193 Cal. App.
4th at 144 ("We believe the statutory language compels us to focus on the conduct
of the defendants and to inquire whether that conduct furthered such defendants'
exercise of their free speech rights concerning a matter of public interest. We find
no requirement that the plaintiff's persona be a matter of public interest.")

Here, the alleged depiction of Plaintiff in this case is connected to an issue of
public interest, given his involvement in the Iraq war, the importance of EOD
technicians in the war effort, the high-level danger of Plaintiff's duties, Plaintiff's
decorations for service during his deployments, and Plaintiff's claims that he
disarmed more IEDs than any single team since operations began in Iraq. (Reply at
6.) Defendants further argue that "the massive popularity of the Film itself
demonstrates a public interest in the fictional lead character's persona and personal
life." (*Id.*) The Court agrees. Moreover, while Plaintiff is not a public figure and
does not lead a public life, Plaintiff arguably "injected himself into . . . public
debate" by engaging in the interview process with Boal, knowing that he was
working on an article for *Playboy. See Dyer,* 147 Cal. App. 4th at 1281.

Furthermore, when Defendants' conduct is viewed in a broader context, the
investigative journalism that contributed to the writing of the *Playboy* article as
well as the *The Hurt Locker* screenplay, is connected to the public interest. Here,
the heart of Plaintiff's Complaint centers on the allegations that while Boal was
embedded as a journalist in Plaintiff's unit, he learned information from Plaintiff

10

0024

that he later used in an article and screenplay without Plaintiff's permission. Both
the article and the movie directly address the problem of improvised explosive
devices and the men who defused them–an issue of paramount importance at that
point in the war. Accordingly, the Court finds that Defendants have met their
burden of demonstrating the complained of conduct is connected to a public issue.

**B.      Plaintiff has Met His Threshold Showing of Facts on One Claim**

Plaintiff has established a sufficient prima facie showing of facts on his
claim for right of publicity/misappropriation of personality. But, Plaintiff has
failed to establish a probability of success on his false light, defamation, breach of
contract, fraud, and constructive fraud/negligent misrepresentation claims.

**1.      Plaintiff Has Presented a Sufficient Prima Facie Showing of Facts
on the Right of Publicity/Misappropriation of Personality Claim**

Plaintiff's misappropriation cause of action rests on alternative theories
because California has both a common law and statutory cause of action for right
of publicity/ misappropriation of personality.

To state a common law cause of action, a plaintiff must allege: (1) the
defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name
or likeness to defendant's advantage, commercially or otherwise; (3) lack of
consent; and (4) resulting injury." *Eastwood, 149 Cal. App. 3d at 417*; *Newton v.
Thomason*, 22 F.3d 1455, 1460 n.4 (9th Cir. 1994) (citing *White v. Samsung*, 971
F.2d 1395, 1397 (9th Cir. 1992)).

California's statutory cause of action prohibits the knowing use of another's
name, voice, photograph or likeness without consent. Cal. Civ. Code § 3344(a).
"The statute is best understood as 'complementing', rather than enacting, the
common law cause of action, because the two are not identical." *Abdul-Jabbar v.*

11

Case 2:10-cv-09034-JFN-JC Document 149-2 Filed 12/21/11 Page 14 of 24 Page ID
#:2189
Case 2:10-cv-09034-JFN-JC Document 149-2 Filed 02/13/2013 ID: 8512444 DktEntry: 34-1 Page 28 of 39

*General Motors*, 85 F.3d 407, 414 (9th Cir. 1997). The statutory cause of action
adds two elements to the common law: knowing use, and a direct connection to
commercial activity. *Id.* Violators are liable for any profits from the unauthorized
use, and punitive damages may be awarded. Cal. Civ. Code § 3344(a).

Neither claim is restricted to a name or likeness, instead focusing on the
individual's broader identity. *Abdul-Jabbar,* 85 F.3d at 413. Rudimentary
similarities are not enough, and fictional works were never intended to be covered.
*Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 322
(1997); *see also Guglielmi v. Spelling-Goldberg ProdProds.*, 25 Cal. 3d 860, 867
(1979) (noting that entertainment is entitled to the same constitutional protection as
the exposition of ideas). In *Polydoros*, Michael Polydoros sued the makers of the
film *The Sandlot* for the portrayal of a character based on his childhood.
*Polydoros,* 67 Cal. App. 4th at 320-21. In denying his claim, the Court reasoned
that the movie was fictional and that viewers would not connect the movie with his
personal story. *Id.* at 323. The film was "manifestly not about appellant. It is
about a fictional character who finds himself in various humorous or absurd
situations." *Id.* at 326. In an earlier misappropriation of personality decision,
Rudolph Valentino's nephew argued his deceased uncle's life served as the basis of
a "fictional" movie and had been used to derive greater income from the film.
*Guglielmi*, 25 Cal. 3d at 862. Although the nephew had a valid misappropriation
claim, Valentino's prominence invited creative comment so his claim failed. *Id.* at
869.

Defendants may assert a transformative use defense. *See Comedy III
Productions v. Saderup*, 25 Cal. 4th 387 (2001); *Winter v. DC Comics*, 30 Cal. 4th
881 (2003). "This transformative use defense poses what is essentially a balancing

test between the First Amendment and the right of publicity." *see Winter*, 30 Cal.
4th 888-89; *Stewart v. Rolling Stone*, 181 Cal. App. 4th 664 (2010) (transformative
use defense applied when defendants depicted half-man/ half-worm musicians);
*but see*, *Hilton*, 580 F.3d at 889 (transformative use defense did not apply to
picture of Paris Hilton's face on another woman's body). The central inquiry is
whether raw material is synthesized or taken as a sum. *Hilton*, 850 F.3d at 889.
Any transformative use must be more than trivial. *Id.*

Plaintiff presents a distinct question from prior cases considered by the
California courts. In the present case, unlike the plaintiff in *Polydoros*, who argued
he was the basis for a fictional movie character, Plaintiff argues that his life story
was appropriated as the sole basis for *The Hurt Locker*.

### a. Plaintiff Presents Evidence That He Was Identifiable

Plaintiff has met his threshold showing of facts on this claim. Unlike
*Polydoros*, in which no public facts on the plaintiff's life were available prior to
the release of *The Sandlot*, Plaintiff was the subject of a biographic profile in both
*Playboy Magazine* and *Reader's Digest*. Here, the disclosure of Plaintiff's story in
the *Playboy* article makes him more identifiable to a broader segment of the
population. Moreover, it is irrelevant that Plaintiff's name was not used in the
movie. As noted in *Abdul-Jabbar v. General Motors*, identity is a broader concept
than either a name or likeness. This undermines Defendants' arguments that the
film was a transformative use, since the use of Plaintiffs' life story as the sole basis
of the movie bears more than a rudimentary similarity to the facts described in the
*Playboy* article. Thus, there is a much higher chance of the movie being associated
with Plaintiff than in *Polydoros*.

### b. Plaintiff Presents Evidence that the Character Was Based

13

### on Him

Although there are some differences between Plaintiff's life and the movie, Plaintiff has provided a sufficient prima facie showing that, if credited, would sustain a claim for misappropriation of personality. Not only did Boal follow Plaintiff closely over a thirty day period, but the fact that he wrote both the *Playboy* article and the script of *The Hurt Locker* strongly suggests the movie was based on Plaintiff, especially when viewed in light of the similarities between *The Hurt Locker* main character (Will James) and Plaintiff. This is supported by Jeremy Renner's interview, in which he states that the character that he played was like "this one guy," belying their transformative use claim. (Plaintiff's Ex. C; docket no. 107.)

### c. Plaintiff Presents Evidence of Lack of Consent/ Resulting Injury

Finally, Plaintiff has met the other requirements of a misappropriation/right of publicity claim. Defendants used the character allegedly based on Plaintiff to profit on the commercial success of *The Hurt Locker*. Although Defendants argue Plaintiff was aware of the production of the movie, if Plaintiff's claims that he provided no consent for the use of his personality in the movie are credited, he has stated the necessary elements of both a statutory and common law claim. Accordingly, Plaintiff's claim for misappropriation of name and likeness/right of publicity survives the motion to strike.

### 2. Plaintiff Has Not Met the Threshold Showing of Facts on the False Light/ Invasion of Privacy Claim

Defendants argue that Plaintiff was not portrayed in a false light in *The Hurt Locker*. To succeed on a false light claim, the portrayal must be both false and

14

highly offensive to a reasonable person. *Fellows v. Nat'l Enquirer*, 42 Cal. 3d 234, 238 (1986); *see also M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 636 (Ct. App. 2001) (stating "a "false light" claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such."). Fair but unflattering depictions are not actionable. *See Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d 146, 161 (1990). In *M.G.*, *Sports Illustrated* and HBO used the photo of a little league team to illustrate stories about coaches molesting youth athletes. 89 Cal. App. 4th at 626. The court reasoned this could be interpreted as reporting that some or all of the players had been molested. *Id.* at 636. Thus, the players' privacy was invaded and they successfully stated a "false light" claim. *Id.*

When multiple invasion of privacy claims are pled, California Civil Code provides that "no person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance." *Id.* at 630 *(*quoting Cal. Civ. Code § 3425.3); *Selleck v. Globe Int'l*, 166 Cal. App. 3d 1123, 1135 (1988). "Courts have interpreted the single-publication rule to mean that a plaintiff may have only one cause of action for one publication." *M.G.*, 89 Cal. App. 4th at 630.

Here, Plaintiff fails to meet the threshold showing of facts on his false light claim. In contrast to the children in *M.G.*, who were not all molested, the portrayal of Plaintiff is not false. Since Plaintiff told Boal in interviews that he wanted to get back to Iraq and that he lived apart from his son, the portrayal is fair–even though it is unflattering–and thus is not actionable. Moreover, the portrayal of Plaintiff was not highly offensive to a reasonable person. Accordingly, the claim is

15

stricken.[6]

### 3.    Plaintiff Has Not Met the Threshold Showing of Facts on the Defamation Cause of Action

Defendants argue that Plaintiff was not defamed. "Defamation is effected by either of the following: (a) Libel. (b) Slander." Cal Civ. Code § 44. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal Civ. Code § 45. "Slander is a false and unprivileged publication, orally uttered, . . . which: . . . (3) Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires . . ." *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1552 (2005).

Typically, the plaintiff's burden of proof depends on whether they are public figure, or private individual.[7]  However, even private individuals must prove actual

---

[6] Defendants also argue that Plaintiff's False Light claim is redundant to Plaintiff's defamation claim under Cal. Civ. Code § 3425.3.  The Court agrees that this claim is redundant and founded on the same publication or utterance, as noted in *M.G.*, and thus should be stricken on this basis as well.

[7] The public figure "designation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy." *Gertz v. Welch*, 418 U.S. 323, 351 (1974).  "The mere involvement of a person in a matter which the media deems to be of interest to the public does not, in and of itself require that such a person become a public figure for the purpose of a subsequent libel action."  *Reader's Digest Ass'n, Inc. v. Superior*

16

malice if defamation involves an issue of public concern. *Khawar v. Globe Internat.*, 19 Cal. 4th 254, 274 (1998) (citing *Dun & Bradstreet, Inc.v. Greenmoss Builders Inc.*, 472 U.S. 749, 761 (1985)); *cf. Aisenson*, 220 Cal. App. at 154 (stating the plaintiff faces a "much higher barrier"). To prove actual malice, a plaintiff "must demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." *Khawar*, 19 Cal. 4t at 275. The plaintiff in *Khawar* was accused in a book of murdering Robert Kennedy, an issue of public concern, after Sirhan Sirhan's conviction for the same murder. *Id.* at 275. The defendant publishing company made little effort to show that the accusations were plausible or that they verified the truth of the accusations. *Id.* at 277. The plaintiff was able meet his burden because it was widely known that Kennedy was killed by Sirhan Sirhan, which should have raised serious doubts for the publishing company. *Id.* at 279. In contrast, the plaintiff in *Guglielmi* was not successful on a defamation claim because fictional work "by definition, eschews an obligation to be faithful to historical truth." *Guglielmi*, 25 Cal. 3d at 871.

Because, as established above, *The Hurt Locker* involves an issue of public interest, Plaintiff must establish actual malice. Although Plaintiff argues Defendants acted with reckless disregard, Plaintiff cannot show that their subjective intent was to falsely portray Plaintiff, even if the character was based on him, because Defendants changed the name of the main character. Since Plaintiff

---

*Court of Marin Cnty*, 37 Cal. 3d 244, 254 (1984). Public figures must prove actual malice as they can respond through the media and influence public opinion. *See New York Times v. Sullivan*, 376 U.S. 254, 281 (1964); *Gertz*, 418 U.S. at 327-28.

17

cannot meet his threshold showing, his claim for defamation is stricken.[8]

### 4. Plaintiff Has Not Met the Threshold Showing of Facts on the Breach of Contract Claim

Defendants argue that Plaintiff's breach of contract claim fails as a matter of law. Since Plaintiff is not named in the alleged contract (the "Ground Rules"), he is a third party beneficiary. "A third party beneficiary must show the contract was made expressly for his or her benefit." *Sofias v. Bank of America*, 172 Cal. App. 3d 583, 587 (1985). The third party must be specifically benefitted in direct and unmistakable language. *Id.*

Here, Plaintiff cannot prove a probability of success because he provides no evidence of any contract between Boal and the Department of Defense. Plaintiff provided a Public Affairs Guidance Cable to which embedded reporters in Iraq were required to adhere. (Pl.'s Ex. A ¶ 4.) First, the Court has deemed this evidence inadmissible because Plaintiff does not provide the proper foundation. Secondly, although Plaintiff argues that Defendant Boal breached paragraph 4.F.14. which precluded media from releasing service member's names and home towns without consent, paragraph 4.A. states "all interviews with service members will be on the record." By his own admission, Plaintiff discussed his background and experiences with Defendant Boal during interviews. Thus, even if the evidence were admissible, the language in the alleged contract undermines Plaintiff's argument that the contract was breached. Moreover, there is no indication that Plaintiff was a third party beneficiary, even if there was a contract.

---

[8] Furthermore, Plaintiff does not identify which aspects of his portrayal are false. In fact, his claims are based on Defendants' depiction of him without permission.

18

Plaintiff's breach of contract claim is therefore stricken.

5. **Plaintiff Has Not Met the Threshold Showing of Facts on the Intentional Infliction of Emotional Distress Claim**

To sustain a claim for the intentional infliction of emotional distress, a plaintiff must prove: (1) defendant's conduct was extreme and outrageous; (2) plaintiff suffered severe or extreme emotional distress; and (3) defendant's conduct proximately caused the injury. *Cervantez v. J.C. Penney Co., Inc.*, 24 Cal. 3d 579, 593 (1979). The first prong is evaluated from the standpoint of a reasonable person, excluding those who are overly sensitive or callous. *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1487 (1986).

In this case, Plaintiff failed to establish a probability of success on his intentional infliction of emotional distress claim because Defendants' behavior was neither extreme nor outrageous. Plaintiff has provided no supporting evidence for this claim beyond broad conclusory allegations. Even if the lead character was based on Plaintiff's life story, Defendants used a fictionalized name in the film, which falls short of extreme and outrageous conduct. Accordingly, Plaintiff's claim is stricken.

6. **Plaintiff Has Not Met the Threshold Showing of Facts on the Fraud Claim**

"To state a cause of action for fraud, a plaintiff must allege: (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Nielson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1140-41 (C.D. Cal. 2003). Allegations of fraud must be pled with particularity and meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097,

1104 (9th Cir. 2003). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires differentiating allegations by defendant and alerting them of their separate involvement. *Vess*, 317 F.3d at 1104. There is a three year statute of limitations for fraud under California law, starting when the fraud is discovered. Cal. Code Civ. Proc. § 338(d).

> a.   ***The Hurt Locker***

Plaintiff has not presented facts that, if credited, would establish fraud. Plaintiff does not submit any admissible evidence that Boal or other Defendants represented that Boal's intent while in Iraq, was to only report on EOD technicians *in general*. Nor does Plaintiff present admissible evidence that Boal or other Defendants obfuscated the fact that he was planning a movie based on the article. Thus, Plaintiff has not stated a sufficient claim against Defendants for fraud.

> b.   ***Playboy* Article**

Defendants also argue that Plaintiff's claim of fraud against Defendant Boal for the *Playboy* article should be stricken as the statute of limitations has passed. The Court agrees. The *Playboy* article was published in August/September 2005 and Plaintiff received a copy in August 2005, but failed to file this action for more than five years. This exceeds the three year statute of limitations under Cal. Code Civ. Proc. § 338(d). As such, the fraud claim against Defendant Boal for the *Playboy* article is also stricken.

> 7.   **Plaintiff's Constructive Fraud and Negligent Misrepresentation Claims are Stricken**

The tort of constructive fraud requires a plaintiff allege: (1) a fiduciary or

contractual relationship; (2) an act, omission, or concealment involving breach; (3) reliance; (4) damage. *Nielson*, 290 F. Supp. 2d at 1142. Although Plaintiff alleges Boal committed constructive fraud, he fails to provide any evidence of a fiduciary or contractual relationship. Since he cannot prove this element, Plaintiff's claim fails as a matter of law.

## C.    Defendants are not Entitled to Attorney's Fees

"A prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1). "Any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *see also ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1018 (2001).

Although Defendants prevailed in their motion on six out of seven claims, the most substantive claim survives. Thus, Defendants have not prevailed in their motion and are not entitled to attorney's fees.

## D.    Summit Entertainment, LLC's Motion to Strike

Defendant Summit Entertainment, LLC also filed a separate Motion to Strike four of the claims. Summit asserts it acquired only the distribution rights to the film after it was completed and screened at the Toronto Film Festival. Summit had no involvement in the development or production of the film, and no contractual relationship with Boal or Bigelow with respect to the film. Further, Summit signed an agreement with The Hurt Locker LLC, which expressly represented and warranted, that "the Picture is not and will not be based in whole or in part on the life of any real person." Accordingly, Summit moves to strike the counts against it for Breach of Contract, IIED, Fraud, and Constructive Fraud/Negligent Misrepresentation and seeks attorneys' fees for the work

21

performed its motion.

Here, Summit contracted to distribute a completed film and had no involvement in the creation of the *Playboy* article or *The Hurt Locker* film. Moreover, Plaintiff failed to respond to Summit's motion. Accordingly, the counts against Summit for Breach of Contract, IIED, Fraud, and Constructive Fraud/Negligent Misrepresentation are stricken.

Since Summit prevailed on its independent motion, it is entitled to attorneys' fees for that motion only. The Court orders Summit to provide a complete accounting of attorneys' fees only as they pertain to the independent motion.

## VII.

## CONCLUSION

For the foregoing reasons, the Court is inclined to GRANT Defendants' Motion in part and DENY in part. The Court tentatively finds that Plaintiff's claim for Right of Publicity/Misappropriation of Name and Likeness survives the Motion to Strike, but his False Light Invasion of Privacy, Defamation, Breach of Contract, Intentional Infliction of Emotional Distress, Actual/Intentional Fraud, and Constructive Fraud/Negligent Misrepresentation claims should be stricken from the Complaint.

22

1          JS-6

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8
    JEFFREY S. SARVER                 )    Case No. 2:10-cv-09034-JHN -JCx
9
                    Plaintiff,         )
10                                     )    **ORDER GRANTING**
    vs.                                )    **DEFENDANTS' MOTIONS TO**
11                                     )    **STRIKE**
    THE HURT LOCKER LLC, *et al*,      )
12                                     )
                                       )
13                  Defendants.        )
    _____)
14

15         The matter is before the Court on Defendants' Motions to Strike pursuant

16  to Cal. Code Civ. Proc. § 425.16.  (Docket no. 78, 98.)  On August 8, 2011, the

17  Court heard oral argument on the Motions and took the matter under submission.

18  (Docket no. 125.)  For the foregoing reasons, the Court GRANTS Defendants'

19  Motions and strikes Plaintiff's Complaint in its entirety.

20                               **I.**

21                    **FACTUAL BACKGROUND**

22         Plaintiff Jeffrey Sarver ("Plaintiff") filed this lawsuit alleging that

23  Defendants based the movie *The Hurt Locker* on Plaintiff's personal experiences

24  while serving in the military, without his consent.  (Compl. ¶ 23.)  Plaintiff has

25  been a member of the United States Army since 1991.  (*Id.* ¶ 26.)  From July 2004

26  through January 1005, he served in Iraq as an Explosive Ordinance Disposal

27  ("EOD") technician with the 788th Ordinance Company.  (*Id.* ¶¶ 33-50.)  Plaintiff

28  was one of approximately 150 EOD technicians in Iraq.  (*Id.* ¶ 36.)