Docket No. 11-56986

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SGT. JEFFREY S. SARVER,

Plaintiff-Appellant

v.

NICHOLAS CHARTIER; et. al.,

Defendants-Appellees,

and

PLAYBOY ENTERPRISES, INC.,

Defendant

On Appeal from the United States District Court, Central District of California
No. 2:10-CV-09034

APPELLANT'S PETITION FOR PANEL REHEARING
OR REHEARING *EN BANC*

Submitted by:

Michael R. Dezsi
Law Office of Michael R. Dezsi, PLLC
615 Griswold, Suite 1600
Detroit, MI 48226
(313) 281-8090
www.dezsilaw.com
Counsel for Plaintiff-Appellant

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT IN SUPPORT OF EN BANC REHEARING AND
SUMMARY OF THE ARGUMENT ................................................................... 1

BACKGROUND .................................................................................................. 3

ARGUMENT ........................................................................................................ 5

I.     The panel's decision in this case, finding that California's right-of- publicity statute is a content-based restriction of free speech subject to strict scrutiny, is at odds with this Court's prior decisions and conflicts with the United States Supreme Court's decision in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) ................................................................................ 5

CONCLUSION .................................................................................................. 12

CERTIFICATE OF COMPLAINCE

CERTIFICATE OF SERVICE

i

# INDEX OF AUTHORITIES

## CASES

~~*Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) .......................................................... 9~~

~~*Carey v. Brown*, 447 U.S. 455 (1980) ................................................................... 10~~

~~*City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 48 (1986) ........................... 9~~

~~*Comedy III Prods., Inc., v. Gary Saderup*, Inc., 25 Cal. 4th 387 (2001) .................. 7~~

~~*Davis v. Electronic Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015) .................................. 7~~

~~*Hart v. Electronic Arts, Inc.*, 717 F.3d 141, 163 (3d Cir. 2013) .............................. 7~~

~~*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2009) ........................................ 7~~

~~*Hilton v. Hallmark*, 599 F.3d 894 (9th Cir. 2010) .................................................. 2~~

~~*Turner Broadcasting Sys. Inc. v. FCC*, 512 U.S. 622, 642-43 (1994) ...................... 9~~

~~*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) ............ 11~~

~~*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ....................................... 9~~

~~*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) ...................... 1~~

~~*Zacchini*, 433 U.S. at 574-75 .................................................................................. 5~~

## CASES

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................................................ 9

*Carey v. Brown*, 447 U.S. 455 (1980) ................................................................... 10

*City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986) ................................. 9

*Comedy III Prods., Inc., v. Gary Saderup*, Inc., 25 Cal. 4th 387 (2001) ............... 2, 7

*Davis v. Electronic Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015) ............................... 2, 7

*Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013) ................................... 2, 7

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ..................................... 2, 7

*NCAA Student-Athlete Name and Likeness Licensing Litigation*, 724 F.3d 1268 (9th Cir. 2013) . 2

*No Doubt v. Activision Publishing, Inc.*, 192 Cal.App.4th 1018 (2011) ......................................... 2

*Turner Broadcasting Sys. Inc. v. FCC*, 512 U.S. 622 (1994) ......................................................... 9

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) ................................ 11

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ..................................................................... 9

*Winter v. DC Comics*, 30 Cal.4th 881 (2003) ................................................................................ 2

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) .................................. *passim*

### **STATUTES**

Cal. Civ. Code § 3344(a) ................................................................................................................ 10

### **RULES**

9th Cir. LR 35 & 40 ......................................................................................................................... 1

FRAP 35 & 40 .................................................................................................................................. 1

**<u>Statement in Support of Rehearing and Summary of the Argument</u>**

Pursuant to FRAP 35 and 40, and 9th Cir. LR 35 and 40, Petitioner Sgt. Jeffrey S. Sarver seeks panel or en banc rehearing, because the panel's decision in this matter is contrary to decisions of the United States Court of Appeals for the Ninth Circuit and the Supreme Court of the United States, and because consideration by the full court is necessary to secure and maintain uniformity of decisions in this court.

The panel's decision to affirm the district court's ruling, which granted defendants' anti-SLAPP motion and dismissed Sgt. Sarver's right-of-publicity claims, was based on its conclusory statement that California's right-of-publicity laws impose an unconstitutional content-based restriction on free speech that triggers strict scrutiny judicial review. Slip Op. at *21-*22(attached as **Addendum A**). However, that one-sentence conclusion was not supported by any meaningful discussion or citation to relevant authorities, and it is contrary to the Supreme Court's decision in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977), in which the Supreme Court held that in the context of the First Amendment, right-of-publicity claims are subject to a balancing of the competing interests.

The panel's conclusion that state right-of-publicity laws constitute content-based regulation of speech also conflicts with a series of right-of-publicity cases

previously decided by this Court, *none* of which subjected California's right-of-publicity laws to strict First Amendment scrutiny. *See, e.g.*, *Davis v. Electronic Arts Inc.*, 775 F.3d 1172, 1178 n.4 (9th Cir. 2015) ("Because we are bound by *Keller*, we do not reach EA's argument that *Keller* improperly failed to apply strict constitutional scrutiny to the plaintiffs' right-of-publicity claims."); *NCAA Student-Athlete Name and Likeness Licensing Litigation*, 724 F.3d 1268 (9th Cir. 2013) ("*Keller*"); *Hilton v. Hallmark*, 599 F.3d 894 (9th Cir. 2010). Instead, consistent with *Zacchini* and with many decisions from other circuits and the California courts, this Court has applied the "transformative use" test as the analytical approach for analyzing California right-of-publicity claims in the context of First Amendment free speech. *See Hilton*, 599 F.3d at 909-10; *Keller*, 724 F.3d at 1271; *Davis*, 775 F.3d at 1178; *see also Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013); *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001); *Winter v. DC Comics*, 30 Cal.4th 881 (2003); *No Doubt v. Activision Publishing, Inc.*, 192 Cal.App.4th 1018 (2011). While the panel sought to distinguish some of those cases factually, it entirely ignored the legal analysis underpinning each of those cases when it concluded, without any meaningful analysis or attempt to reconcile these courts' prior rulings, that California's right-of-publicity laws are content-based restrictions on free speech that are for that reason presumptively unconstitutional. Sl. Op. at *22, *26-*27.

Having failed to apply the correct constitutional standard, and having departed from both the Supreme Court's and this Court's prior precedents, the panel's decision should be reheard either by the panel itself or by the Ninth Circuit *en banc*.

## BACKGROUND

In this case, Plaintiff-Appellant Sgt. Sarver asserts a California right-of-publicity claim against the makers of the motion picture *The Hurt Locker*. Sgt. Sarver contends that the main character in that movie is based on his life and experiences, that he did not consent to that depiction of his life, and that the film's false portrayal of him harmed his reputation. Slip Op. at *7. The district court granted defendant movie producers' motions to dismiss under California's anti-SLAPP statute, concluding that the film's "original expressive content" was "transformative" and thus protected by the First Amendment. *Id.* at *8.

The parties' appellate briefing focused on whether Defendants' portrayal of Sgt. Sarver involved a matter of "public concern" protected by the anti-SLAPP statute, *see* Slip Op. at *19-*20; whether the filmmakers had in fact appropriated Sgt. Sarver's name or likeness (a dispute that the panel recognized as the parties' "primar[y]" disagreement), *id.* at *21; and whether any use of Sgt. Sarver's name or likeness was transformative. Defendants *never* argued in their appellate briefs that California's right-of-publicity laws, either on their face or as applied to this

3

matter, impose a content-based restriction on speech that requires heightened constitutional scrutiny. Instead, Defendants asked this Court to apply the well-established "transformative use" test and to uphold the dismissal of Sgt. Sarver's claims under that standard. Appellees' Joint Answering Br. at 36-37.

Instead of addressing the legal arguments raised and briefed by the parties, the panel affirmed the district court's dismissal of Sgt. Sarver's claims based on the panel's unprecedented conclusion that California's right-of-publicity laws impose a content-based restriction on speech subject to strict constitutional scrutiny. Slip Op. at *21-*27. The panel assumed without deciding that Sarver could establish all elements of his California state law right-of-publicity and that California would apply its right of publicity to claims like Sgt. Sarver's, even though the panel appeared to be unsure about how those underlying state law issues should be resolved. *See, e.g.*, Slip Op. at *26 n.9 (concluding that "it is not clear that California would extend its right of publicity to Sarver's situation"). Taking these threshold facts as established for purposes of the anti-SLAPP motion, the panel then moved directly into its constitutional analysis, concluding that California's right-of-publicity laws impose a "presumptively unconstitutional" content-based restriction on speech – at least when applied to claims by private individuals who have not "sought to attract public attention" or endeavored to develop a "performance or persona" with "economic value" – and that Sgt. Sarver

4

could not make the showing necessary to overcome the presumption of unconstitutionality. Slip Op. at *26-*27.

## ARGUMENT

Rehearing by the panel or by an *en banc* panel of this Court is appropriate here because the panel, in reaching out to decide an issue not raised or briefed by the parties, issued an opinion that conflicts with numerous Supreme Court, Ninth Circuit, and sister court authorities.

First, the panel's opinion is inconsistent with the Supreme Court's decision in *Zacchini* – the only case in which the high court has addressed the competing interests underlying the right of publicity and the First Amendment. In that case, the Supreme Court rejected a television news station's argument that its public broadcast of plaintiff's 15-second "human cannonball" act was categorically protected by the First Amendment. The Supreme Court did not apply strict constitutional scrutiny in *Zacchini*. Instead, it carefully balanced the respective First Amendment and publicity interests at stake and concluded that "[w]herever the line in particular situations is to be drawn between media reports that are protected and those that are not, we are quite sure that the First and Fourteenth Amendments do not immunize the media when they broadcast a performer's entire act without his consent." *Zacchini*, 433 U.S. at 574-75.

5

The panel decision in this case distinguished *Zacchini* on the ground that, unlike Mr. Zacchini (or the celebrity in *Hilton* or the college athletes in *Keller),* Sgt. Sarver "did not 'make the investment required to produce a performance of interest to the public' or invest time and money to build up economic value in a marketable performance or identity." Slip Op. at *25-*26. After asserting this factual distinction – without any supporting citation to the record below – the panel concluded that "[t]he state has no interest in giving Sarver an economic incentive to live his life as he otherwise would," and that the film was therefore "fully protected by the First Amendment[.]" Slip Op. at *26. But the panel's efforts to distinguish *Zacchini* on its facts do not justify its decision to apply strict constitutional scrutiny to Sgt. Sarver's California right-of-publicity claims. Far from explaining why the right-of-publicity claims in this case involve content-based restrictions while those in *Zacchini* did not, the panel's points of distinction merely suggest that the First Amendment and publicity interests that must be balanced in this case differ from those before the Supreme Court in *Zacchini*.

This Court, like the Supreme Court, has recognized on many occasions that courts considering First Amendment defenses to California right-of-publicity claims must balance the parties' respective First Amendment and publicity interests. In *Keller*, for example, this Court applied the California Supreme Court's "transformative use" test to "balance the right of publicity of a former

6

college football player against the asserted First Amendment right of a video game developer to use his likeness in its expressive works." 724 F.3d at 1271. As the California Supreme Court explained in *Comedy III Prods., Inc., v. Gary Saderup*, Inc., 25 Cal. 4th 387 (2001), that transformative use test considers:

> [w]hether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question. We ask, in other words, whether the produce containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness. And when we use the word 'expression' we mean expression of something other than the likeness of the celebrity.

*Id.*; *see also Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2009) (applying "transformative use" test); *Davis v. Electronic Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015) (same). The Third Circuit applies the same test when balancing competing publicity and First Amendment interests, as Judge Bybee noted in *Keller*. *Keller*, 724 F.3d at 1278 (citing *Hart v. Electronic Arts, Inc.*, 717 F.3d 141, 163 (3d Cir. 2013) (concluding that "the Transformative Use Test appears to strike the best balance because it provides courts with a flexible – yet uniformly applicable – analytical framework.")).

Without explanation or acknowledgement, the panel declined to follow the analytical model established by this Court's prior decisions applying the transformative use test, and instead applied strict constitutional scrutiny to Sgt. Sarver's California right-of-publicity claims. Slip Op. at *24 n.6, *26 ("We need

7

not and do not reach the question of whether [the transformative use test] applies in this case."). But as a different panel of this Court recognized in its 2015 *Davis* decision, *Keller* is binding circuit precedent that precludes any subsequent panel from applying strict constitutional scrutiny to California right-of-publicity claims. 775 F.3d at 1178 n.4 ("Because we are bound by *Keller*, we do not reach EA's argument that Keller improperly failed to apply strict constitutional scrutiny to the plaintiffs' right-of-publicity claims.").

Nor can *Davis* and *Keller* validly be distinguished on the ground that Sarver "did not 'make the investment required to produce a performance of interest to the public . . . or invest time and money to build up economic value in a marketable performance or identity." Slip Op. at *26. While differences in the strength of Sgt. Sarver's publicity interests as compared to those of the athletes involved in *Keller* and *Davis* might affect the balancing analysis required under *Zacchini*, they provide no basis for concluding, as the panel did, that California's right-of-publicity laws impose a content-based restriction of speech in one setting but not the other.

In short, the panel's decision disregards the principal holding of *Zacchini* – that a private individual's right-of-publicity claim is not *per se* trumped by the First Amendment and that courts considering such a First Amendment defense must balance the relevant interests rather than applying strict constitutional scrutiny.

8

The panel's decision also disregards the Ninth Circuit's and the California Supreme Court's rulings that consistently apply the transformative use test as the best means of weighing the competing interests at stake. As a result, the panel's decision leaves lower court judges and litigants with materially different and wholly inconsistent legal standards to apply in right-of-publicity cases involving expressive works.

Rehearing by the panel or by an *en banc* panel of this Court is also appropriate because the panel's conclusory statement that California's right-of-publicity laws impose content-based restrictions on speech (which was made without the benefit of briefing from the parties) is inconsistent with the United States Supreme Court's own decisions regarding such restrictions. "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting Sys. Inc. v. FCC*, 512 U.S. 622, 642-43 (1994). In determining whether a regulation is content based or content neutral, the court looks to the purpose of the regulation: "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Laws are "content-neutral" rather than "content-based" if they are "justified without reference to the content of the regulated speech," *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001),

and are intended to serve purposes "unrelated to the suppression of free expression[.]" *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 48 (1986).

The panel erroneously concluded in its decision that "[b]y its terms, California's right of publicity law clearly restricts speech based upon its content." (Sl. Op. at 22). To the contrary, California's right-of-publicity law does not target any particular type of speech, nor does it favor any particular viewpoint.

California's right-of-publicity law "prohibit[s] any other person from using a celebrity's name, voice, signature, photograph, or likeness for commercial purposes without the [celebrity's] consent." Sl. Op. at 21. Specifically, Cal. Civ. Code §3344(a) provides a civil cause of action against "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, goods, or for purposes of advertising or selling . . . products, merchandise, goods or services, without such person's prior consent[.]" The basic purpose of California's right-of-publicity law is to protect the privacy of an individual. The statute does not distinguish the content of prohibited speech, nor does it favor any particular content or viewpoint.

The panel's conclusion that California's right-of-publicity laws constitute a content-based restriction on speech finds no support in any authority from either this Court or the decisions of the Supreme Court. For example, in *Carey v. Brown*, 447 U.S. 455 (1980), the U.S. Supreme Court declared unconstitutional a Chicago

10

ordinance that prohibited all picketing in residential areas except labor picketing that was related to employment. In *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000), the Supreme Court struck down a law that regulated sexual speech. By contrast, in *Turner Broadcasting*, 512 U.S. 622, the Supreme Court concluded that a federal law requiring cable companies to carry local broadcast stations was content-neutral because it required the cable company to include all stations regardless of the content of their programs.

Perhaps because the issue was never properly briefed to the Court, the panel opinion made no effort to address the relevant Supreme Court authorities or to explain how its conclusion can be reconciled with those binding precedents. Even if the panel were not bound by *Zacchini* and by *Keller*'s holding that courts must balance the relevant First Amendment and publicity interests rather than applying strict constitutional scrutiny, the panel's decision to apply such scrutiny was rendered in the absence of meaningful briefing or argument by either Sgt. Sarver or Defendants. At the very least, rehearing should be granted to permit a full and proper consideration of that issue after adequate briefing from the parties.

Given the wide reaching implications and importance of the panel's decision, rehearing should be granted in this matter. Without rehearing, subsequent panels of this Court will have two diametrically opposed standards to apply to publicity claims, creating chaotic and inconsistent results.

## **CONCLUSION**

For all the reasons set forth, this Court should grant the petition for panel rehearing or rehearing *en banc*.

    Submitted by:

    /s/ *Michael R. Dezsi*
    Michael R. Dezsi
    Law Office of Michael R. Dezsi, PLLC
    615 Griswold, Suite 1600
    Detroit, MI 48226
    (313) 281-8090
    www.dezsilaw.com

## **CERTIFICATE OF COMPLIANCE**

 I certify under Fed. R. App. P. 35 and Ninth Circuit Rule 35 that Appellant's Petition for Rehearing and Rehearing En Banc is proportionally spaced, has a type face of 14 points and contains 3028 words.

           /s/ *Michael R. Dezsi*
           Michael R. Dezsi

Dated: March 2, 2016

9th Circuit Case Number(s) | 11-56986, 12-55429

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*****************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | 03/01/2016 |.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/Michael R. Dezsi

*****************************************************************

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | 03/01/2016 |.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

N/A

Signature (use "s/" format) | s/Michael R. Dezsi