No. 11-56986

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**Sgt. Jeffrey S. Sarver**,
*Plaintiff-Appellant,*

v.

**Nicolas Chartier, *et al.*,**
*Defendants-Appellees,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 2:10-CV-09034-JHN-JC

---

**[PROPOSED] AMICUS CURIAE BRIEF OF THE MAJOR LEAGUE
BASEBALL PLAYERS ASSOCIATION, MAJOR LEAGUE SOCCER
PLAYERS UNION, NATIONAL BASKETBALL PLAYERS
ASSOCIATION, NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION, AND NATIONAL HOCKEY LEAGUE PLAYERS'
ASSOCIATION IN SUPPORT OF PETITION FOR REHEARING OR
REHEARING EN BANC**

MICHAEL RUBIN
P. CASEY PITTS
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
*Counsel for Amici Curiae*

(Additional Counsel on Inside Cover)

## ADDITIONAL COUNSEL FOR AMICI CURIAE

SEAN SANSIVERI
National Football League
Players Association
1133 20th Street, NW
Washington, DC  20036
*Counsel for Amicus Curiae*
*National Football League*
*Players Association*

DAVID PROUTY
Major League Baseball
Players Association
12 East 49th Street, 24th Floor
New York, NY  10017
*Counsel for Amicus Curiae*
*Major League Baseball*
*Players Association*

DON ZAVELO
National Hockey League
Players' Association
20 Bay Street Suite 1700
Toronto, ON  M5J 2N8
*Counsel for Amicus Curiae*
*National Hockey League*
*Players' Association*

GARY KOHLMAN
National Basketball
Players Association
310 Lenox Avenue
New York, NY  10027
*Counsel for Amicus Curiae*
*National Basketball*
*Players Association*

JON NEWMAN
Sherman, Dunn, Cohen, Leifer
     & Yellig, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C.  20001
*Counsel for Amicus Curiae*
*Major League Soccer*
*Players Union*

## CORPORATE DISCLOSURE STATEMENT

The National Football Players Association and National Basketball Players Association are corporations that do not issue stock and have no parent corporations.  The Major League Baseball Players Association, National Hockey League Players' Association, and Major League Soccer Players Union are unincorporated associations.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................. iii

INTERESTS OF THE AMICI CURIAE .......................................................1

INTRODUCTION ........................................................................3

BACKGROUND .........................................................................4

ARGUMENT ...........................................................................5

    I.     Binding Precedent Requires Defendants' First Amendment Rights
          To Be Balanced Against Plaintiff's Publicity Rights...........................5

    II.    California's Right-of-Publicity Laws Do Not Impose a
          Content-Based Restriction on Speech ...................................10

    III.   The Panel's Statement Regarding Content-Based Regulation
          Was Unnecessary to the Outcome of the Appeal...............................15

CONCLUSION ........................................................................16

CERTIFICATE OF COMPLIANCE.......................................................18

CERTIFICATE OF SERVICE ...........................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bartnicki v. Vopper*,
532 U.S. 514 (2001)..........................................................................12

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000)..........................................................................13

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986)............................................................................12

*Cohen v. California*,
403 U.S. 15 (1971)............................................................................14

*Davis v. Electronic Arts, Inc.*,
775 F.3d 1172 (9th Cir. 2015) ...............................................3, 4, 7, 9

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985)............................................................................8

*Eldred v. Ashcroft*,
537 U.S. 186 (2003).......................................................................8, 12

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)............................................................................8

*Golan v. Holder*,
132 S.Ct. 873 (2012)...........................................................................8

*Haelan Labs., Inc. v. Topps Chewing Gum, Inc.*,
202 F.2d 866 (2d Cir. 1953) .............................................................11

*Hart v. Electronic Arts, Inc.*,
717 F.3d 141 (3d Cir. 2013) ...............................................................7

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2009) ..............................................................7

iii

*In re NCAA Student-Athlete Name and Likeness Licensing Litigation*,
    724 F.3d 1268 (9th Cir. 2013) .....................................................................*passim*

*Police Dept. of Chicago v. Mosley*,
    408 U.S. 92 (1972).......................................................................................13

*Reed v. Town of Gilbert*,
    135 S.Ct. 2218 (2015).................................................................................13

*Sarver v. Hurt Locker LLC*,
    No. 2:10-cv-09034-JHN-JC, 2011 WL 11574477 (C.D. Cal. Oct. 13, 2011)......5

*Sarver v. Chartier*,
    No. 11-56986 (9th Cir. Feb. 17, 2016). .....................................................*passim*

*Zacchini v. Scripps-Howard Broadcasting Co.*,
    433 U.S. 562 (1977).....................................................................................*passim*

## State Cases

*Canessa v. J.I. Kislak, Inc.*,
    97 N.J.Super. 327, 235 A.2d 62 (Law Div. 1967)...........................................10

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
    25 Cal.4th 387 (2001) ........................................................................3, 7, 11, 14

*Guglielmi v. Spelling-Goldberg Prods.*,
    25 Cal.3d 860 (1979) ...................................................................................16

*Palmer v. Schonhorn Enters., Inc.*,
    96 N.J. Super. 72, 232 A.2d 458 (Ch. Div. 1967) ...........................................11

## Constitutions and Statutes

U.S. Const. amend. I .....................................................................................*passim*

Cal. Civil Code §3344.....................................................................................10

iv

## INTERESTS OF THE AMICI CURIAE

The Major League Baseball Players Association, Major League Soccer Players Union, National Basketball Players Association, National Football League Players Association, and National Hockey League Players' Association ("Player Associations") are labor unions that represent professional athletes in collective bargaining, group licensing, and other matters. The Associations have a strong interest in obtaining rehearing of the panel's February 17, 2016 published decision, insofar as it states, "By its terms, California's right of publicity law clearly restricts speech based on content," and "[i]f California's right of publicity law applies in this case, it is simply a content-based restriction [that] is presumptively unconstitutional, and cannot stand unless Sarver can show a compelling state interest in preventing the defendant's speech, [which] Sarver cannot do . . . ." *Sarver v. Chartier*, No. 11-56986 (9th Cir. Feb. 17, 2016) ("Slip Op.") at 22, 26-27 (footnote omitted).

No previous appellate decision has held that state right-of-publicity laws constitute content-based regulation of speech. The panel's statement was unsupported by legal analysis or citation to case authority, was not necessary to the outcome (given the panel's decision to affirm the district court, which had applied the traditional "transformative use" balancing test), and applied a legal standard that the parties had not addressed in their trial court or appellate briefs. Further, the panel's statement is wrong as a matter of law and cannot be reconciled with the analysis or outcome of previous right-of-publicity/First Amendment cases decided by other appellate courts.

1

The Player Associations have a strong interest in ensuring that courts apply a consistent and legally supportable analysis in right-of-publicity/First Amendment cases. For many years, the Associations have relied in part on right-of-publicity protections in negotiating and entering into group licensing agreements on behalf of the professional athletes they represent, authorizing companies throughout the world to depict those athletes in a broad range of commercial products and services, from trading cards, collectible merchandise, and apparel to video games, films, and television shows. Through these negotiations, the Associations and their member athletes have been able to ensure that: 1) those athletes are not associated with or perceived to promote products or services they choose not to support, 2) the commercial value of the athletes' names and likenesses is not diluted through misuse or overuse, and 3) the athletes are fairly compensated for the use of their images to enhance the consumer appeal of products or services.[1]

The panel's statement that California's right of publicity constitutes a content-based restriction of speech subject to strict constitutional scrutiny threatens to undermine the Associations' ability to protect their members from unauthorized commercial exploitation of their likenesses and identities in a broad range of products simply because those products may include some element of expressive content. The Player Associations submit this brief in support of rehearing to explain: 1) why the panel's holding is contrary to prior Ninth Circuit, Supreme

---

[1] The NBPA and MLSPU license their members' publicity rights to the NBA and MLS, respectively, which in turn license those rights to others.

2

Court, and other appellate precedents; 2) how the panel (or the en banc court) could decide this appeal without holding that the right of publicity constitutes a content-based restriction on speech, simply by using the "transformative" use balancing analysis that courts (including the district court below) have historically used in such cases; and 3) why the panel should rehear the case and modify its decision or the Ninth Circuit should vacate the panel decision and hear this case en banc.[2]

## INTRODUCTION

Almost 40 years ago, the Supreme Court recognized in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977), that courts considering a First Amendment defense to an individual's state law right-of-publicity claim must carefully *balance* the competing interests involved rather than apply strict constitutional scrutiny. 433 U.S. at 576, 578. This Court has followed *Zacchini* in a series of right-of-publicity/First Amendment cases, including most recently *In re NCAA Student-Athlete Name and Likeness Licensing Litigation*, 724 F.3d 1268 (9th Cir. 2013) ("*Keller*"), and *Davis v. Electronic Arts, Inc.*, 775 F.3d 1172 (9th Cir. 2015), in which the Court balanced the competing interests by applying the "transformative use" test first articulated in *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001). *See Keller*, 724 F.3d at 1271 (courts in such cases must "balance the right of publicity of [plaintiff] against the asserted First

_____

[2] No counsel for a party authored this brief in whole or in part, and no person other than amici or their counsel made a monetary contribution to fund its preparation or submission.

Amendment right of [defendant] to use [plaintiff's] likeness in its expressive works," and must apply the "transformative use" test to determine whether defendant's First Amendment interests outweigh plaintiff's publicity rights); *Davis*, 775 F.3d at 1178 n.4 (recognizing *Keller* as binding precedent establishing test for determining whether First Amendment precludes right-of-publicity claim arising out of expressive work).

The panel in this case, rather than deciding whether the district court had correctly applied the transformative use balancing test, instead concluded that California's right-of-publicity laws, as applied here, impose a presumptively unconstitutional content-based restriction on speech that does not survive strict scrutiny review. Slip Op. at 21, 26-27. That conclusion is contrary to binding Supreme Court and Ninth Circuit precedents governing the right of publicity and "content-based" regulations of speech. Rehearing should be granted to restore consistency to this Circuit's right-of-publicity precedents and to protect the important interests served by that right.

## BACKGROUND

The principal merits question in this case is whether plaintiff Sgt. Jeffrey Sarver, a U.S. Army explosive ordinance disposal technician who served in Iraq, can pursue a California right-of-publicity claim challenging the alleged portrayal of his life and experiences in the film *The Hurt Locker*, or whether that claim is barred by the First Amendment. Slip Op. at 6-7. The district court, applying the California Supreme Court's "transformative use" test, concluded that any portrayal

4

of plaintiff was "transformative" and thus protected by the First Amendment. *Sarver v. Hurt Locker LLC*, No. 2:10-cv-09034-JHN-JC, 2011 WL 11574477, at *6-*7 (C.D. Cal. Oct. 13, 2011).

On appeal, defendants argued that their movie was entirely fictional and did not depict Sarver at all, and that even if the lead character were based on Sarver, the district court correctly concluded that the movie's depiction was "transformative." *See* Appellees' Joint Answering Brief at 34-41, 46-51. The panel, rather than deciding the case based on the parties' arguments, instead concluded that "[b]y its terms, California's right of publicity law clearly restricts speech based upon its content." Slip Op. at 22; *see also id.* at 26-27 ("If California's right of publicity law applies in this case, it is simply a content-based speech restriction.") (footnote omitted). Because "content-based speech restriction[s]" are "presumptively unconstitutional" and subject to strict constitutional scrutiny, the panel required plaintiff to "show a compelling state interest in preventing defendants' speech." *Id.* at 27. The panel held that plaintiff could not make that showing because he is a "private person who lived his life and worked his job," and "[t]he state has no interest in giving [him] an economic incentive to live his life as he otherwise would." *Id.* at 26.

## ARGUMENT

### I. Binding Precedent Requires Defendants' First Amendment Rights To Be Balanced Against Plaintiff's Publicity Rights

The right of publicity, like other forms of intellectual property, gives individuals an incentive to create works and persona having economic value.

*Zacchini*, 433 U.S. at 573, 576-77. "[T]he State's interest is closely analogous to the goals of patent and copyright law, focusing on the right of the individual to reap the reward of his endeavors[.]" *Id.* at 573. Where an individual has created an economically valuable identity through his or her endeavors, "[n]o social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." *Id.* at 576 (citation omitted).[3]

*Zacchini* recognized these important interests in considering whether the First Amendment precluded the right-of-publicity claim of a performer whose 15-second "human cannonball" act was broadcast by a local news station. *Id.* at 563-64. The Court weighed the strength of the performer's publicity interests and balanced them against the news broadcasters' competing First Amendment interests. The Court concluded that the First Amendment did not bar the performer's claim, which rested on "what may be the strongest case for a 'right of publicity'" – "the appropriation of the very activity by which the entertainer acquired his reputation" in a manner that "pose[d] a substantial threat to the economic value of that performance" – while posing little threat to the First

---

[3] Contrary to the panel's suggestion that publicity rights may only be asserted by individuals who affirmatively "sought to attract public attention," Slip Op. at 26, *Zacchini* recognized that the right of publicity applies whenever the plaintiff's name or likeness has "market value." *Id.* Limiting the right of publicity to individuals motivated by a desire for fame would add a subjective component that has never before been required, and would deny publicity rights, for example, to world-class professional athletes motivated by their love for their sport or desire to compete, or Nobel-winning scientists motivated by scientific curiosity or altruism.

Amendment interests of the news station or the public. *Id.* at 576-78.

Consistent with *Zacchini*, this Court has recognized that First Amendment rights "are not absolute, and [that] states may recognize the right of publicity to a degree consistent with the First Amendment." *Keller*, 724 F.3d at 1271. Where such rights potentially conflict, the courts "must balance the right of publicity of [plaintiff] against the asserted First Amendment right of [defendant] to use [plaintiff's] likeness in its expressive works." *Id.*

To accomplish the required balancing in a consistent and doctrinally sound manner, this Court has used the California Supreme Court's "transformative use" test. *See id.* at 1273; *Davis*, 775 F.3d at 1177; *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 909 (9th Cir. 2009) ("Th[e] 'transformative use' defense poses 'what is essentially a balancing test between the First Amendment and the right of publicity.'") (citing *Winter v. DC Comics*, 30 Cal.4th 881, 885 (2003)). As this Court explained in *Keller*, the "transformative use" test asks "'whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation.'" *Keller*, 724 F.3d at 1273 (citing *Comedy III*, 25 Cal.4th at 391). "'[W]hen a work contains significant transformative elements, it is not only especially worthy of First Amendment protection, but it is also less likely to interfere with the economic interest protected by the right of publicity.'" *Id.* (citing *Comedy III*, 25 Cal.4th at 405).[4]

---

[4] Other courts also use the "transformative use" test to balance First Amendment and publicity rights. *See, e.g.*, *Comedy III*, 25 Cal.4th 387; *Hart v.*

(continued . . .)

The Supreme Court's approach to other forms of intellectual property is consistent with *Zacchini, Keller*, and *Davis* in recognizing that balancing, rather than strict scrutiny, is required when intellectual property and speech rights potentially conflict. The Supreme Court has repeatedly held, for example, that federal copyright laws (which *Zacchini* recognized as comparable to right-of-publicity laws, *see* 433 U.S. at 573) are not subject to heightened constitutional scrutiny under the First Amendment, even though they invariably restrict speech. *See, e.g.*, *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003); *Golan v. Holder*, 132 S.Ct. 873, 889-91 (2012) (same). That is because copyright law, like the right of publicity, "spur[s] the creation . . . of new expression," *Eldred*, 537 U.S. at 219; *cf. Zacchini*, 433 U.S. at 577, and because copyright law's "fair use" doctrine (like the balancing of interests required under *Zacchini*) separately accommodates First Amendment concerns. *See Eldred*, 537 U.S. at 219-20.

Likewise, the Supreme Court has never subjected state defamation and libel laws to heightened constitutional scrutiny. Instead, the Court carefully balances the interests served by those laws against countervailing First Amendment interests to determine what, if any, restrictions the First Amendment requires. *See, e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757 (1985) (plurality opinion); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974).

---

(. . . continued)
*Electronic Arts, Inc.*, 717 F.3d 141, 163 (3d Cir. 2013) ("[T]he Transformative Use Test appears to strike the best balance because it provides courts with a flexible – yet uniformly applicable – analytical framework.").

The panel chose not to apply the "transformative use" test, despite the controlling Supreme Court and Ninth Circuit precedents (and the parties' urging). Instead, it concluded that those precedents were distinguishable because, unlike the NCAA student-athletes in *Keller* or the human cannonball in *Zacchini*, plaintiff was a private individual who "did not 'make the investment required to produce a performance of interest to the public,' or invest time and money to build up economic value in a marketable performance or identity." Slip Op. at 26 (quoting *Zacchini*, 433 U.S. at 576).

The panel's characterization of the parties' interests could have led it to conclude that plaintiff had failed to establish a violation of his California right of publicity, *see* Slip Op. at 26-27 & n.9, or that the movie's fictional portrayal of plaintiff "transform[ed]" the "raw materials of [his] life . . . into art," and was thus sufficient to satisfy the transformative use test. *Id.* at 26. Instead, the panel veered sharply away from previous precedents and held that the right of publicity is "a content-based speech restriction" that cannot survive strict scrutiny review.

The panel made no mention of this Court's previously stated reasons for expressly *declining* to apply strict scrutiny review in right-of-publicity/First Amendment cases. *See, e.g.*, *Davis*, 775 F.3d at 1178 n.4 ("Because we are bound by *Keller*, we do not reach EA's argument that *Keller* improperly failed to apply strict constitutional scrutiny to the plaintiffs' right-of-publicity claims."). While the panel purported to justify its new approach on the ground that Sarver's publicity interests were weaker than those at issue in *Zacchini*, *Hilton*, *Keller*, and

*Davis*, that claimed factual distinction has no bearing on what *legal standard* should be applied. The strength or weakness of a plaintiff's right of publicity bears on the weight it receives in the balancing of interests, but is completely irrelevant to the threshold legal question of whether a state's right-of-publicity law constitutes a "content-based" speech restriction.[5]

In short, the panel had no justification for disregarding the binding precedents of this Court and the Supreme Court. This Court should grant rehearing to restore consistency to its precedents.

## II. California's Right-of-Publicity Laws Do Not Impose a Content-Based Restriction on Speech

The panel's failure to apply the legal tests required by past precedents provides sufficient grounds for rehearing. Even more significant, though, is the lack of justification for its conclusion that California's right-of-publicity laws restrict speech based upon its content. That conclusion would effectively eliminate the right of publicity in any case where a defendant appropriated a person's

---

[5] Moreover, amici disagree with the panel's characterization of Sarver's publicity rights as weak. Under California's statutory and common law right of publicity, every individual whose name, identity, or likeness has economic value has the right to seek damages for the unconsented commercial appropriation of his or her persona, unless a statutory exception or other recognized defense applies. *See, e.g.*, Cal. Civil Code §3344(d) (exempting uses in "in connection with any news, public affairs, or sports broadcast or account, or any political campaign"). Right-of-publicity plaintiffs are not required to prove that they sought fame (or infamy) or devoted years to cultivating their celebrity. *See supra* at 6 n.3; *Canessa v. J.I. Kislak, Inc.*, 97 N.J.Super. 327, 235 A.2d 62 (Law Div. 1967) (recognizing right-of-publicity claim by private individual whose family photograph and story were used in advertising campaign). All that matters is that the individual's identity have commercial value.

identity without authorization in any medium or on any platform that included any expressive element, including in merchandise like posters, t-shirts, cards, or games – the very sorts of goods to which the right of publicity has always been understood to apply. *See, e.g.*, *Haelan Labs., Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953); *Palmer v. Schonhorn Enters., Inc.*, 96 N.J. Super. 72, 232 A.2d 458 (Ch. Div. 1967); *Comedy III*, 25 Cal.4th 387.

The panel did not explain the basis for its conclusion. *See* Slip Op. at 22. Although it briefly summarized the elements of a California right-of-publicity claim, *id.* at 21, the panel never identified which of those elements were content-based or why; and it never cited any authorities to support its statement that laws governing the appropriation of a person's likeness for commercial or other advantage are necessarily content-based. *See id.* at 21-22, 26-27. Perhaps the panel believed that California's right of publicity is content-based because the first question courts often ask in such cases is whether defendant in fact appropriated the plaintiff's likeness. But that is no more a content-based inquiry than the threshold question in a broad range of cases in which a defendant's product, conduct, or statements include expressive elements. *See supra* at 8. In *Zacchini,* the first question was whether the challenged news broadcast included footage of Zacchini's act, but no Justice concluded that Ohio's right of publicity was therefore a content-based law triggering strict scrutiny.[6] Likewise, courts considering the

---

[6] Although the appropriation in *Zacchini* involved the plaintiff's "entire act," that description pertained to the weight given to plaintiff's publicity rights in

(continued . . .)

"fair use" defense in copyright cases (which provided the model for the California Supreme Court's "transformative use" defense, *see Keller*, 724 F.3d at 1273-74) do not apply strict scrutiny, even though courts must consider the content of a challenged work in determining whether plaintiff's copyrights were infringed and whether defendant's use was protected. *See, e.g.*, *Eldred*, 537 U.S. at 221.

The Supreme Court has repeatedly explained that laws are content-neutral for First Amendment purposes if they are "justified without reference to the content of the regulated speech." *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) (citation and emphasis omitted); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) (regulation of adult theaters was content-neutral where City Council's "intent . . . was unrelated to the suppression of free expression"). State right-of-publicity laws clearly satisfy this standard. They protect a form of intellectual property – the commercial value of a person's name, likeness, and identity – from all types of unauthorized commercial exploitation, in order to "prevent[] unjust enrichment by the theft of goodwill" and "to afford greater encouragement to the production of works of benefit to the public." *Zacchini*, 433

---

(. . . continued)
the required balancing, not to whether plaintiff had any such rights at all or whether to balance the relevant interests. *See Zacchini*, 433 U.S. at 574-75 ("Wherever the line in particular situations is to be drawn between media reports that are protected and those that are not, we are quite sure that the First and Fourteenth Amendments do not immunize the media when they broadcast a performer's entire act without his consent."). Under the panel's apparent logic, however, *Zacchini*'s holding that plaintiff could pursue his right-of-publicity claim because the television station had broadcast plaintiff's "entire act" rather than merely "reporting the newsworthy facts about [plaintiff's] act," *id.* at 574-75, itself would constitute a "content-based" restriction on speech.

U.S. at 576-77. That protection is available whether the misappropriation takes an expressive or non-expressive form. *Cf. City of Erie v. Pap's A.M.*, 529 U.S. 277, 289-90 (2000) (ordinance banning public nudity was "content-neutral" even though it prohibited expressive nude dancing). Because the right of publicity's justifications are content-neutral and because that right does not single out speech for adverse treatment, state laws that protect that right, like other intellectual property laws, are not content-based.

The panel was correct that, as a general matter, state laws may not restrict speech based on its content. Slip Op. at 21-22 (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972), and *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015)). In both of the cited decisions, though, the challenged laws *on their face* discriminated between different forms of speech on the basis of content. *See, e.g.*, *Mosley*, 408 U.S. at 92-93 (ordinance barred picketing outside schools during school hours but permitted picketing arising from labor dispute); *Reed*, 135 S.Ct. at 2227 ("The restrictions in the Sign Code that apply to any given sign . . . depend entirely on the communicative content of the sign."). California's right-of-publicity laws, by contrast, do not target particular speech for disadvantageous treatment based on its content. Indeed, they do not "target" speech at all. *Id.* at 2226. Instead, they apply equally to expressive and non-expressive appropriation of a plaintiff's identity or likeness. For right-of-publicity purposes, a baker selling cakes depicting a famous athlete is no different from a merchandise company selling posters of the athlete or a video game maker selling electronic games in

13

which users can "be" the athlete.

The panel's conclusion that right-of-publicity laws impose a content-based restriction on speech threatens to upend the rights and expectations underlying the well-established and robust commercial markets for goods and services depicting athletes, celebrities, and other public figures. If the panel's ruling is allowed to stand, any right-of-publicity claim arising from the commercial exploitation of a public figure's identity would be "presumptively unconstitutional," Slip Op. at 27, as long as that work contained any insignificant amount of "expressive" content. For example, an apparel company could produce t-shirts depicting any celebrity as long as the depiction was created using some minimal degree of artistic skill. *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 19 (1971) (clothing may constitute "speech" for First Amendment purposes); *but see Comedy III*, 25 Cal.4th at 391, 393 (First Amendment did not preclude right-of-publicity claim targeting sale of t-shirts featuring charcoal drawings of The Three Stooges). A merchandise company could create and sell "bobblehead" dolls depicting famous athletes and defeat any resulting right-of-publicity claim by asserting that its dolls were artistically sculpted. And no right-of-publicity claim could ever be pursued in the context of works such as video games or news broadcasts. *But see Keller*, 724 F.3d at 1271; *Zacchini*, 433 U.S. at 578.

Neither this Court's precedents nor the Supreme Court's decisions support such a far-reaching disruption of existing markets, rights, and expectations. Rehearing should be granted to correct the panel's unwarranted holding.

14

**III.    The Panel's Statement Regarding Content-Based Regulation Was
Unnecessary to the Outcome of the Appeal**

Rehearing is also warranted because the panel's statement that California's
right-of-publicity laws impose "content-based" restrictions on speech was entirely
unnecessary to its result.  Just as the district court decided this case based on
application of the traditional "transformative use" test, so could the panel have
concluded that defendants' fictionalized depiction of Sarver's bomb-demolition
work in Iraq was transformational under that test.  Indeed, the panel came very
close to so holding in stating: "*The Hurt Locker* is speech that is fully protected by
the First Amendment, which safeguards the story tellers and artists who take the
raw materials of life – including the stories of real individuals, ordinary or
extraordinary – and transform them into art, be it articles, books, movies, or plays."
Slip Op. at 26; *see also id.* at 20 (noting the movie's important contributions to
public discussion).

As *Keller* explained, an expressive depiction of a plaintiff's likeness is
"transformative" and protected by the First Amendment where that likeness is
merely the "raw material[] from which an original work is synthesized," where the
work in question is "primarily the defendant's own expression," where "creative
elements predominate in the work," where the value of work does not derive
primarily "from the fame of the [individual] depicted," and where the defendant's
skill and talent were not "manifestly subordinated to the overall goal of creating a
conventional portrait . . . so as to commercially exploit [the plaintiff's] fame."
*Keller*, 724 F.3d at 1274 (citation omitted).  Although Sarver made compelling

15

arguments in support of his position, the panel could have decided this appeal by applying the same factors that the district court cited in holding that any depiction of plaintiff in *The Hurt Locker* was transformative. Indeed, the panel acknowledged that three justices of the California Supreme Court, with the implicit approval of a fourth, had previously concluded that First Amendment interests outweigh the right of publicity in the context of fictionalized film portrayals of real individuals. Slip Op. at 26 n.9 (discussing *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal.3d 860 (1979)).

Such an approach would not have required the panel to conclude that California's right-of-publicity laws impose "content-based" restrictions on speech or to assert – contrary to all prior authority – that the strength of an individual's publicity rights depends upon whether that individual actively pursued fame. Thus, although the issues raised by this appeal are sufficiently important and the result sufficiently unclear to justify en banc review, at a minimum the Court should eliminate the references to content-based restrictions on speech and Sarver's subjective intentions at pp. 21-22 and 26-27 of the Slip Opinion.

## CONCLUSION

For the foregoing reasons, this Court should grant panel or en banc rehearing of this matter.

Dated: March 11, 2016    By:    */s/ Michael Rubin*
                                      Michael Rubin

                                    MICHAEL RUBIN
                                    P. CASEY PITTS
                                    Altshuler Berzon LLP
                                    *Counsel for Amici Curiae*

SEAN SANSIVERI
National Football League
Players Association
*Counsel for Amicus Curiae*
*National Football League*
*Players Association*

DAVID PROUTY
Major League Baseball
Players Association
*Counsel for Amicus Curiae*
*Major League Baseball*
*Players Association*

DON ZAVELO
National Hockey League
Players' Association
*Counsel for Amicus Curiae*
*National Hockey League*
*Players' Association*

GARY KOHLMAN
National Basketball
Players Association
*Counsel for Amicus Curiae*
*National Basketball*
*Players Association*

JON NEWMAN
Sherman, Dunn, Cohen, Leifer
& Yellig, P.C.
*Counsel for Amicus Curiae*
*Major League Soccer*
*Players Union*

17

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 29-2(c)(2), that the Amicus Curiae Brief of the National Football League Players Association, Major League Baseball Players Association, National Hockey League Players' Association, National Basketball Players Association, and Major League Soccer Players Union in Support of Petition for Rehearing or Rehearing En Banc is proportionally spaced, has a typeface of 14 points, and contains 4,178 words.

Dated:  March 11, 2016                    /s/ *Michael Rubin*
                                                      Michael Rubin

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeal for the Ninth Circuit by using the appellate CM/ECF system on March 11, 2016.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 11, 2016                     */s/ Michael Rubin*
                                          Michael Rubin